**David SMITH, a minor, etc., et al., Respondents,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant.**

**No. C3-83-718.**

Supreme Court of Minnesota.

Aug. 24, 1984.

James W. Kenney, William H. Leary, St. Paul, for appellant.

John F. Eisberg, Barbara Ashley, St. Paul, for respondents.

PETERSON, Justice.

This is a declaratory judgment action brought by plaintiffs David Smith, Bradley Smith, and Tom Wilson,[1] individually and as assignees of M. Mark LeRud, against defendant, St. Paul Fire & Marine Insurance Company (insurer), claiming coverage under professional liability and personal catastrophe insurance policies issued by insurer to M. Mark LeRud.

At the time of the events giving rise to this action, M. Mark LeRud was a medical doctor practicing in Lake Park, Minnesota. Plaintiffs were minors being treated by LeRud for various medical problems.[2] Each was sexually assaulted by LeRud on more than one occasion during the course of medical examination or treatment at LeRud's clinic or at the local hospital.

In April 1981, plaintiffs began medical malpractice actions against LeRud for dam-

ages suffered as a result of the sexual contacts. LeRud tendered defense of the actions to insurer, but insurer refused to defend, claiming that LeRud's conduct was not covered by the policies. LeRud then retained an attorney, who advised him to settle with plaintiffs. On January 29, 1982, LeRud entered into settlement agreements with plaintiffs, whereby he agreed to settlement amounts and assigned his rights under insurer's policies to plaintiffs. Rather than seeking to recover directly from LeRud, plaintiffs agreed to seek payment from insurer only.

As a result, plaintiffs began the instant declaratory judgment action against insurer. The issues tried were whether there was coverage under LeRud's professional liability policy or his personal catastrophe policy and whether the agreements entered into between plaintiffs and LeRud were reasonable and prudent. Counsel stipulated that if the trial judge found coverage but found the settlements unreasonable, he could, as fact finder, reduce the settlements to amounts he considered fair and reasonable.

The trial court, acting without a jury, concluded that the sexual assaults were "done under the guise of medical treatment" and that plaintiffs' damages were a "result of the doctor's withholding of professional services" and were, therefore, covered by the professional liability policy.[3] The court also concluded that the settlement amounts were unreasonable and entered judgment for reduced amounts that "would fairly and adequately compensate plaintiffs." We reverse.

Doctor M. Mark LeRud, a general practice physician, opened a clinic in Lake Park, Minnesota, in 1974. Between fall 1978 and May 1980, LeRud sexually assaulted plaintiffs on repeated occasions. Other than one incident that occurred in the emergen-

---

**1.** These names are aliases, used to protect the identity of the minor plaintiffs.

**2.** One boy, age 17, was being treated for hyperactivity; one, age 15, for a heart condition caused by boyhood rheumatic fever; and one,

age 14, for a sports-related groin injury and a knee injury.

**3.** The trial court held that coverage under the personal catastrophe policy was not available. This holding is not disputed on appeal.

cy room of the local hospital, each incident occurred during a regularly scheduled visit to LeRud's clinic. There was no conversation between LeRud and plaintiffs about the sexual assaults before they took place, while they were taking place, or after they took place. The acts occurred during the middle or at the end of the examinations.

In May 1980, one of the plaintiffs informed his mother of the sexual assaults. The appropriate authorities were contacted, and LeRud was subsequently charged with criminal sexual conduct in the third degree. Ultimately, he entered a plea of guilty to criminal sexual conduct in the fourth degree.

The Minnesota Board of Medical Examiners subsequently undertook an investigation of LeRud's actions, resulting in restriction of LeRud's license to practice medicine. Rather than comply with the restrictions, LeRud chose not to continue the practice of medicine.

At the request of their attorneys, each plaintiff was seen by a psychiatrist and two psychologists for the purpose of evaluating psychological damage caused by LeRud's actions. One of the psychologists, Dr. Lorna Anderson, testified at trial. The reports of all three doctors were admitted into evidence. The doctors concluded that each plaintiff had suffered emotional and psychological harm as a result of LeRud's conduct, although the severity of the harm varied among plaintiffs.

Although we believe that LeRud's conduct was outrageous and damaging to plaintiffs, our limited role on appeal is to determine the insurance contract's meaning as intended by LeRud and insurer. The issue is whether LeRud's conduct, which resulted in damages to plaintiffs, is covered by the professional liability policy issued by insurer. The "plain english professional insurance" policy provides:

Your professional liability protection covers you for damages resulting from:

1. Your providing or withholding of professional services.

Specifically, the issue is whether damages to plaintiffs, caused by the sexual assaults, were damages resulting from "[LeRud's] providing or withholding of professional services." The policy does not define the terms used to describe coverage.

■ If the terms of an insurance policy are not specifically defined, they must be given their plain, ordinary, or popular meaning. *Dairyland Insurance Co. v. Implement Dealers Insurance Co.,* 294 Minn. 236, 244, 199 N.W.2d 806, 811 (1972). In this case, the policy language is clear and unambiguous;[4] the policy covers damages caused by improperly provided or improperly withheld professional services. In a professional liability policy issued to a medical doctor, the term "professional services" plainly refers to medical treatment of physical ailments by the doctor. "[D]amages resulting from * * * providing * * * of professional services" contemplates improper or incorrect medical treatment of a physical ailment by the insured doctor. "[D]amages resulting from * * * withholding of professional services" contemplates failure on the part of the insured doctor to discover or treat an ailment that should have been discovered or treated.

■ It is undisputed that LeRud's acts of sexual contact were not part of medical treatment. The trial court found that LeRud's acts were "solely for the satisfaction of [his] prurient interests." We hold that the acts of sexual contact involved neither the providing nor withholding of professional services and, therefore, that the insurer's policy does not cover the damages sustained by plaintiffs.

Reversed.

WAHL, Justice (dissenting).

I respectfully dissent. LeRud's professional liability policy provided coverage "for damages resulting from [LeRud's]

---

**4.** Because the policy language is clear and unambiguous, we reject plaintiffs' argument that the language should be interpreted to cover damages occurring "under the guise of medical treatment."

providing or withholding of professional services." His patients, plaintiffs in this case, boys 14, 15, and 17 years of age, suffered damages from sexual assaults that occurred during the course of medical treatment. One attempted suicide. The trial court, in its memorandum, clearly set out the factual basis for a determination that coverage existed:

The plaintiffs were young, impressionable, and, for the most part, sexually naive. Typically, doctors are respected authority figures in a community. Dr. LeRud was no exception. * * * All of the incidents occurred in Dr. LeRud's office or at the local hospital. All of the incidents occurred when plaintiffs were alone with Dr. LeRud. All of the incidents occurred during the course of a medical examination or treatment. All of the incidents occurred solely because plaintiffs were brought to Dr. LeRud for medical examination or treatment. All of the incidents occurred within the context of a medical environment. Additionally, the doctor's silence surrounding each of these incidents lends credence to plaintiffs' contentions that they believed that the doctor's manipulations were somehow related to their medical treatment or examination.

The essence of plaintiffs' claims is that LeRud, as a physician, during treatment, departed from proper standards of medical practice, thereby causing them damage. To these boys, with their limited knowledge of medicine and sexuality, the physical manipulation that occurred was inseparably related to LeRud's provision of medical treatment. The policy language, "damages resulting from * * * providing * * * of professional services," is ambiguous, at least to the extent that it includes the situation where a physician, acting as a medical authority within the context of a medical environment, sexually abuses vulnerable patients during the provision of those professional services. On this ground I would affirm the trial court's determination of coverage.

The insurer's argument that a finding of coverage under the policy for sexual abuse of patients during the course of medical treatment also necessitates a finding of coverage for monetary extortion by the physician during medical treatment is without merit. Monetary extortion is in no way related to medical treatment. The sexual abuse in this case was physical manipulation, which is closely related to what physicians may do in the course of medical treatment, at least from the perspective of innocent patients.

The insurer could have specifically excluded claims resulting from "wilful acts" by the insured, as it did in LeRud's professional office liability protection policy. The insurer could have specifically excluded "loss resulting from any dishonest or illegal act" by the insured, as it did in LeRud's medical equipment insurance policy. It chose to do neither. Under Minnesota law, any exemptions to coverage must be clearly expressed in the insurance policy involved. *Aetna Insurance Co. v. Getchell Steel Treating Co.*, 395 F.2d 12 (8th Cir. 1968). If a clear expression of exemption is lacking, we must interpret any doubt or ambiguity as to what was intended under a policy in favor of coverage. *Orren v. Phoenix Insurance Co.*, 288 Minn. 255, 179 N.W.2d 166 (1970). I would affirm the decision of the trial court.

YETKA, Justice (dissenting).

I join in the dissent of Justice Wahl.

SIMONETT, Justice (dissenting).

I join in the dissent of Justice Wahl. If the patient goes to the doctor's office for the sole purpose of treatment and if the patient is unaware that some of the doctor's conduct occurring during the course of treatment is aberrant, then, it seems to me—in the absence of a policy exclusion—that the doctor's misconduct arises out of the services he undertook to provide.