**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Respondent,**

v.

**Ronald W. LOVE, Defendant,**

**M.A., et al., Appellants.**

**No. C7-89-1268.**

Court of Appeals of Minnesota.

Oct. 24, 1989.

Review Granted Dec. 15, 1989.

Kay Nord Hunt, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, Minneapolis, for respondent.

John A. Warchol, Robert J. Hajek, Warchol, Berndt & Hajek, Minneapolis, for appellants.

Heard, considered and decided by RANDALL, P.J., and FOLEY and LANSING, JJ.

## OPINION

LANSING, Judge.

Mary Adams and Dr. Richard Adams[1] appeal a summary judgment in a declaratory action brought to determine coverage under a professional liability policy. The trial court held that alleged malpractice, which included the psychologist's sexual involvement with Mary Adams, was not part of the professional treatment and not covered by the policy. Because the undisputed affidavit of the sole expert witness supports the Adamses' contention that a number of the alleged acts of negligence arose within the counseling relationship, we reverse the summary judgment precluding coverage and remand to the trial court.

## FACTS

Dr. Ronald Love, a licensed consulting psychologist, began treating Mary Adams in December 1985 for problems stemming from childhood sexual abuse and current marital difficulties. At Dr. Love's urging, Mary Adams' husband, Dr. Richard Adams, was also included in the the counseling in separately scheduled sessions.

In late May of 1986, Dr. Love became emotionally and sexually involved with Mary Adams. Love continued to meet with Mary Adams at the counseling center, in a park, in a car, and at the Adamses' home until August 1986. During these meetings, Love and Adams hugged, kissed and engaged in intercourse. Love continued to treat Dr. Adams until late June of 1986, when Adams became aware of the sexual relationship between his wife and Love.

The Adamses' brought the underlying action on theories of negligence and breach of contract.[2] Love requested indemnity and defense from his professional liability insurer, St. Paul Fire and Marine Insurance Company. The insurer undertook the defense subject to a reservation of rights and brought a declaratory judgment action to determine coverage. The motion was submitted on depositions and affidavits, including the affidavit of the Adamses' expert witness, Gary Schoener. Schoener, a licensed psychologist and Ph.D. candidate in clinical counseling, is the executive director of a major metropolitan counseling center and an adjunct faculty member of the Univ-

---

1. These names are assumed in order to protect appellants' identities.

2. Adamses' joint brief limits the claims to negligence. Consequently, we assume the contract actions have been abandoned and discuss only the negligence claims.

ersity of Minnesota School of Public Health.

Basing his opinion on transcripts of Dr. Love's and Mary Adams' depositions and Dr. Love's answers to interrogatories, Schoener concluded that Dr. Love breached the standards of care as a psychologist practicing in the metropolitan Minneapolis area and was negligent in providing services or in failing to provide services in the following ways: (1) improper and non-therapeutic disclosure of the therapist's personal. problems to the patient; (2) therapist's failure to adequately recognize and deal with emotional transference and counter transference; (3) therapist's failure to monitor his personal health, preventing effective therapy; (4) therapist's attempting to personally counsel client to "fix" the results of therapist's sexual involvement; and (5) failure to provide outside therapeutic intervention for problems arising from the sexual involvement.

The trial court granted the insurer's motion for summary judgment, reasoning that "the sexual involvement of defendant Love and Mary Adams could not be construed to be part of any professional treatment or therapy that Mary Adams was receiving" and "therefore do[es] not constitute the providing or withholding of professional services."

## ISSUES

1. Did the trial court err in its summary judgment declaration that the professional liability policy did not cover the acts alleged by Mary Adams?

2. Did the trial court err by granting the insurer summary judgment on the claims of Richard Adams?

## ANALYSIS

The facts underlying the Adamses' claims are undisputed and the resolution of the issue turns on the language of the professional liability policy. The interpretation and construction of an insurance policy is a question of law. *Iowa Kemper Insurance Co. v. Stone,* 269 N.W.2d 885, 887 (Minn.1978). We are required to determine whether the trial court properly inter-preted and applied the law to the facts presented. *Associated Independent Dealers, Inc. v. Mutual Services Insurance Co.,* 304 Minn. 179, 229 N.W.2d 516, 519 (1975). The applicable portion of Love's professional liability policy states:

> This policy provides coverage for professional liability claims made against you * * *. To be covered, claims must be based on events that happen while the policy is in effect and arise out of the profession named in the coverage summary [i.e., "psychologist"].

> Individual coverage. We'll pay amounts you're legally required to pay for damages resulting from:

> * Professional services that you provided or should have provided.

The policy does not define the phrase "arise out of the profession" or the term "professional services." When the terms of an insurance policy are not specifically defined, they must be given their plain, ordinary, or popular meaning. *Dairyland Insurance Co. v. Implement Dealers Insurance Co.,* 294 Minn. 236, 244, 199 N.W.2d 806, 811 (1972).

## I

Mary Adams contends that the action alleged in her complaint came within the policy's coverage because Love breached the standard of care required of a therapeutic professional and was negligent in his provision of psychotherapeutic services. The insurer argues that the alleged actions occurred outside the professional relationship and are not covered by the policy.

The cluster of actions and inactions on which the expert premises his opinion of negligence relate primarily to a therapist-client interaction referred to as "transference" and "counter transference." Originally identified by Sigmund Freud, transference is "a reproduction of emotions relating to repressed experiences, especially of childhood, and a replacement of another person, such as the psychoanalyst, for the original object of the repressed impulses." *Webster's Unabridged Dictionary,* Second

Edition. The medical dictionaries similarly define it as:

The mental process whereby a person transfers patterns of feelings and behavior that had previously been experienced with important figures such as parents or siblings to another person. Quite often these feelings are shifted to the psychiatrist. * * *

*Taber's Cyclopedic Medical Dictionary* (16th ed.1989), at 1891. Counter transference occurs when the therapist experiences transference toward the client.

Transference, as a component of the professional counseling relationship, was first analyzed in *Zipkin v. Freeman,* 436 S.W.2d 753 (Mo.1968). The court in *Zipkin* extended coverage under a professional liability policy to a psychiatrist for a claim for damages arising from sexual acts precipitated by the psychiatrist's mishandling of transference. Other jurisdictions have followed this reasoning and found coverage when sexual acts occurred as a result of mishandling transference. *See, e.g., Anclote Manor Foundation v. Wilkinson,* 263 So.2d 256 (Fla.Dist.Ct.App.1972), (psychiatrist's "acting out" of his feelings which arose in the context of the transference phenomenon was malpractice as a matter of law); *Cotton v. Kambly,* 101 Mich.App. 537, 300 N.W.2d 627 (Mich.Ct. App.1980) (no reason to distinguish between sexual acts and others, such as improper administration of a drug or a defective operation, because both are departures from proper standards of medical practice); *St. Paul Fire and Marine Insurance Co. v. Mitchell,* 164 Ga.App. 215, 296 S.E.2d 126 (Ga.Ct.App.1982) (summary judgment for the insurer in a declaratory judgment action inappropriate because expert testimony is needed to determine whether the acts of the doctor and the alleged mishandling of the transference phenomenon constitute medical malpractice); *L.L. v. Medical Protective Company,* 122 Wis.2d 455, 362 N.W.2d 174, *pet. for rev. denied,* 122 Wis.2d 783, 367 N.W.2d 223 (1985) (Wis.Ct.App.1984) (psychiatrist's sexual acts with a patient arising from improper transference can constitute failure to give proper treatment within the policy lan-

guage). *See also Vigilant Insurance Company v. Kambly,* 114 Mich.App. 683, 319 N.W.2d 382 (Mich.Ct.App.1982).

In *L.L. v. Medical Protective Company,* the Wisconsin Court of Appeals noted that "[m]edical authorities are nearly unanimous in considering sexual contact between therapist and patient to be malpractice," 362 N.W.2d at 176. The court recognized the effect of transference:

It is apparent from the foregoing that a sexual relationship between therapist and patient cannot be viewed separately from the therapeutic relationship that has developed between them. The transference phenomenon makes it impossible that the patient will have the same emotional response to sexual contact with the therapist that he or she would have to sexual contact with other persons. * * * The trial court erred by holding that [the psychiatrist] was not acting in the course of his professional services or professional responsibilities when he engaged in sexual activity with L.L.

362 N.W.2d at 178. *See also Vigilant Insurance Co. v. Employers Insurance of Wausau,* 626 F.Supp. 262 (S.D.N.Y.1986).

Federal courts have also analyzed transference in malpractice claims against mental health professionals. *See Andrews v. United States,* 732 F.2d 366 (4th Cir.1984); *Simmons v. United States,* 805 F.2d 1363 (9th Cir.1986). In *Simmons* the Court of Appeals explained:

Transference is crucial to the therapeutic process because the patient "unconsciously attributes to the psychiatrist or analyst those feelings which he may have repressed towards his own parents.... [I]t is through the creation, experiencing and resolution of these feelings that [the patient] becomes well."

805 F.2d at 1365. The *Simmons* court concluded that the centrality of transference to therapy makes it impossible to separate an abuse of transference from the treatment itself.

The affidavit of appellants' expert witness, Gary R. Schoener, directly addresses Dr. Love's failure to recognize and deal

with the transference phenomenon, noting that:

> The standard of care for therapists requires that the therapist look for the transference phenomenon, clearly identify it, clarify the process to the client, and use the process to the benefit of the client.

Schoener concluded that Dr. Love "either failed to recognize the transference process occurring between Mary Adams and himself, or that having recognized it, failed to effectively use it in order to assist with a therapeutic resolution of Mary Adams' problems." In either case, it is alleged, Dr. Love's actions did not meet the standard of care required of a therapeutic professional in dealing with transference.

In urging this court to uphold the summary judgment on Mary Adams' claims, the insurer relies almost exclusively on *Smith v. St. Paul Fire & Marine Insurance Co.*, 353 N.W.2d 130 (Minn.1984). *Smith*, a malpractice action against a medical doctor, addressed coverage under a virtually identical professional liability policy for sexual abuse of three minor patients that occurred in the course of their treatment for physical ailments/injuries.

In holding that the professional liability policy did not provide coverage, the *Smith* court concluded:

> [T]he policy language is clear and unambiguous; (footnote omitted) the policy covers damages caused by improperly provided or improperly withheld professional services. In a professional liability policy issued to a medical doctor, the term "professional services" plainly refers to medical treatment of physical ailments by the doctor. * * * "[D]amages resulting from * * * withholding of professional services" contemplates failure on the part of the insured doctor to discover or treat an ailment that should have been discovered or treated.

353 N.W.2d at 132.

A number of other jurisdictions have followed this rationale in situations involving medical treatment of a physical ailment. *See Hirst v. St. Paul Fire and Marine Insurance Co.*, 106 Idaho 792, 683 P.2d 440

(Ct.App.1984); *Standlee v. St. Paul Fire and Marine Insurance Co.*, 107 Idaho 899, 693 P.2d 1101 (Ct.App.1984); *Washington Insurance Guaranty Association v. Hicks*, 49 Wash.App. 623, 744 P.2d 625 (1987); *South Carolina Medical Malpractice Liability Insurance Joint Underwriting Association v. Ferry*, 291 S.C. 460, 354 S.E.2d 378 (1987); *St. Paul Fire and Marine Insurance Co. v. Quintana*, 165 Mich. App. 719, 419 N.W.2d 60 (1988).

The insurer claims that *Smith* is "materially indistinguishable" from the present case. We disagree. The court in *Smith* drew a rigorous line in excluding the tortious sexual acts from the professional insurance coverage. This same distinction does not apply here. There is no clear dichotomy between the professional purpose and all of the alleged tortious acts. Alleged breaches of the professional obligation, if proved, are departures related to the therapy itself.

Courts in other jurisdictions have consistently distinguished the *Smith* line of cases from cases involving mental health therapists who mishandle transference. *Simmons v. United States*, 805 F.2d 1363 (9th Cir.1986), cites *Smith* in noting that courts do not routinely impose liability on physicians for sexual contact with patients, and concludes:

> The crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative of a patient than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers, and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon.

805 F.2d at 1366.

■ Although the pleadings in this action could be more precise, it is the mishandling of transference, and not the resulting sexual conduct, which gives rise to the alleged malpractice. More specifically, Dr. Love's failure to provide or negligence in providing professional services, including improper handling of transference, if

proved, constitutes the proximate cause. The sexual interaction, if relevant, may define some of the damages. The sexual acts are an incidental outgrowth of the primary malpractice, not the proximate cause.

By not specifically excluding certain acts from coverage we obviously do not intend to encourage inappropriate sexual conduct by counseling professionals, nor do we believe this is a likely result. As the Michigan Court of Appeals stated in *Kambly:*

> [I]t is unlikely that the insured was induced to engage in the unlawful conduct by reliance upon the insurability of any claim arising therefrom or that allowing insurance coverage here would induce future similar unlawful conduct by practitioners. Nor does it appear that the policy was obtained in contemplation of a violation of the law.

319 N.W.2d at 385. We also consider the effect of the alleged malpractice on the client. We do not view professional liability coverage only in terms of a supposed "benefit" to the wrongdoer.[3] To the extent that the coverage relieves Dr. Love of at least some of the potential financial expense for his alleged malpractice, this is a "benefit" for which he and the insurer bargained, and for which premiums have been paid.

Furthermore, the insurer had the opportunity to define the terms of its bargain with Dr. Love. Had it wished to do so, the insurer could have excluded certain types of malpractice claims. *See, e.g., Govar v. Chicago Insurance Co.,* 879 F.2d 1581 (8th Cir.1989) (no coverage for malpractice claim against psychologist whose policy excluded "claims arising out of any sexual act or acts performed or alleged to have been performed by the named insured").

## II

▪ Dr. Adams separately alleged negligence in the treatment provided him by Dr. Love. His claim is supported by Schoener's affidavit that Dr. Love's actions in continuing to engage in therapy with Dr. Adams while being sexually involved with Mary Adams breached his obligation to provide effective therapy.

In *Weaver v. Union Carbide Corporation,* 378 S.E.2d 105 (W.Va.1989), the West Virginia Supreme Court recognized that a marriage counselor who counsels both husband and wife and becomes sexually intimate with one of the spouses may be liable to both. *See also Horak v. Biris,* 130 Ill.App.3d 140, 146–47, 85 Ill.Dec. 599, 604, 474 N.E.2d 13, 18 (1985); *Mazza v. Huffaker,* 61 N.C.App. 170, 300 S.E.2d 833 (1983), *review denied,* 309 N.C. 192, 305 S.E.2d 734 (1983).

The trial court in this case did not address the separate claim of Dr. Adams. We see no basis for excluding Dr. Adams' claim from insurance coverage.

## DECISION

Dr. Love's professional liability policy does not per se exclude coverage for Mary Adams' or Richard Adams' claim of negligent provision of psychotherapy. Whether the acts or failures to act occurred and whether the resulting damage was directly caused by the professional services or lack of them is subject to proof. We reverse the summary judgment for the insurer and remand to the trial court for further proceedings.

Reversed and remanded.

---

**3.** As the court stated in *Reliance Insurance Company v. St. Paul Insurance Companies,* 307 Minn. 338, 343, 239 N.W.2d 922, 925 (1976) in reference to an attorney's professional liability policy:

> One of the prime reasons for this type of liability insurance is to pay the damages caused by certain acts or omissions of the insured. Unfortunately, omissions are frequent, including omissions to immediately notify the insurer. The very nature of these peculiarities insured against indicates that *this type of insurance is not only a contract between the insurer and the insured but also a contract for the benefit of the public.*

(Emphasis added.)