Jane DOE, a minor, by Mary ROE,
her parent, and Mary Roe,
Appellants–Plaintiffs,

v.

MADISON CENTER HOSPITAL
and Bryant King, Appellees–
Defendants.

No. 71A04–9501–CV–9.

Court of Appeals of Indiana.

June 22, 1995.

Rehearing Denied Aug. 14, 1995.

Lennie C. Zappia, Loris P. Zappia, Zappia Flagella & Zappia, South Bend, for appellants.

Robert J. Palmer, D. Andrew Spalding, May, Oberfell & Lorber, South Bend, John F. Schmoll, Kristin A. Mulholland, Spangler, Jennings & Dougherty, Merrillville, for appellees.

## OPINION

RILEY, Judge.

This appeal arises out of the dismissal of Plaintiffs–Appellants' complaint for lack of subject matter jurisdiction. The sole issue before us is whether a complaint, which alleges coerced sexual intercourse between a minor patient and a hospital employee, falls within the purview of the Indiana Medical Malpractice Act.[1]

We reverse and remand.

### FACTS

Jane Doe, a minor, entered Madison Center Hospital (the Hospital) on September 14, 1992, for psychiatric evaluation, care, and treatment. She remained under a continuous course of treatment at the Hospital until November 24.

Bryant King was employed in the children's psychiatric ward of the Hospital as a mental health counselor/orderly. (R. at 13). Previous to his position at the Hospital, King was a production worker and a hospital volunteer. Until June, 1992, he was employed as a desk clerk at the University of Notre Dame. (R. at 146). During the relevant time period, King was infected with chlamydia, a venereal disease.

On September 29, 1992, and on subsequent dates, while under residential hospitalization and care, Jane Doe was subjected to inappropriate conduct: King sexually assaulted and molested her, and coerced her into engaging in sexual intercourse. (R. at 12). As a result of this conduct, Jane Doe contracted

chlamydia, became sick and disabled, and suffered physical and emotional distress.

On April 26, 1994, Jane Doe, through her mother Mary Roe, and Mary Roe, individually (hereinafter referred to collectively as "Doe"), initiated an action in nine counts alleging negligence, intentional torts, and breach of contract against King and the Hospital. Doe amended her complaint on May 9, 1994.

On August 1, 1994, the Hospital and King filed motions to dismiss pursuant to Ind.Trial Rule 12(B)(1) for lack of subject matter jurisdiction, arguing that Doe's allegations fell within the purview of the Indiana Medical Malpractice Act, IND.CODE 27–12–1–1 *et seq.* (1993) (hereinafter referred to as "the Act"), and Doe had failed to file her complaint with the Indiana Department of Insurance. The Hospital contended that the claim sounded in medical malpractice because King had mishandled the transference phenomenon; or that King had acted outside the scope of his employment. King adopted the Hospital's motion with the exception of the claim that he was acting outside the scope of his employment.

Doe conceded, in her memorandum in opposition to the motions to dismiss, that Count 2, paragraphs 14–18, Counts 3, 6 (excluding paragraph 45), 7, 8, and 9 were within the purview of the Act. However, she asserted that the remaining allegations were not covered by the Act. Specifically, the remaining counts assert:

Count 1 requests a jury trial.

Count 2, paragraphs 1–13, recites the operative facts of the action and alleges that the Hospital is liable for King's conduct based on the theory of respondeat superior.

Count 4 alleges that King's conduct constituted the intentional tort of assault and battery, and Jane Doe suffered severe physical and mental injuries.

Count 5 alleges that King's conduct constituted the intentional tort of intentional infliction of mental distress.

However, as Appellees correctly point out, this issue is beyond the scope of the trial court's decision and thus, not before us for review.

---

1. The Appellants raise an additional issue regarding a hospital's liability for an employee's conduct when wrongful conduct is within the purview of the Indiana Medical Malpractice Act.

Count 6, paragraph 45, alleges that the Hospital assumed a non-delegable duty to be responsible for the care and safety of Jane Doe even if King's conduct does not constitute a rendition of health care.

(R. at 99–100).

On September 26, 1994, the trial court dismissed the remaining counts of Doe's complaint, finding that "[t]he substance of the allegations in the plaintiffs' Complaint are subject to the requirements of the Indiana Medical Malpractice Act ... [and t]he plaintiffs have not presented their proposed Complaint to the Medical Review Panel." (Supp.R. at 3).

Doe appeals.[2]

## DISCUSSION

### A. Standard of Review

■ Subject-matter jurisdiction is the power of a court to hear and decide a particular class of cases. *Putnam County Hosp. v. Sells* (1993), Ind.App., 619 N.E.2d 968, 970; *Behme v. Behme* (1988), Ind.App., 519 N.E.2d 578, 582, *reh'g denied.* The issue of subject-matter jurisdiction is resolved by determining whether the claim involved falls within the general scope of authority conferred on a court by the Indiana Constitution or by statute. *Sells*, 619 N.E.2d at 970; *State ex rel. Hight v. Marion Super. Ct.* (1989), Ind., 547 N.E.2d 267, 269.

■ When a trial court is confronted with a motion to dismiss under T.R. 12(B)(1), it must decide upon the complaint, the motion, and any affidavits or other evidence submitted whether it possesses the authority to further adjudicate the action. *Cooper v. County Bd. of Review of Grant County* (1971), 150 Ind.App. 232, 237, 276 N.E.2d 533, 536. In reaching its decision, the trial court may weigh the evidence. *Indiana Dept. of Highways v. Dixon* (1989), Ind., 541

N.E.2d 877, 884. On appeal from a motion to dismiss pursuant to T.R. 12(B)(1), we accept as true the facts as alleged in the complaint. *Sells*, 619 N.E.2d at 970; *United States Steel v. Northern Indiana Pub. Serv.* (1985), Ind. App., 482 N.E.2d 501, 503, *reh'g denied, trans. denied.* Because the facts are not in dispute for the purposes of this appeal, and we could have raised the question of subject matter jurisdiction *sua sponte*, "we are in as good a position as the trial court to determine it." *Id.*

### B. Nature of the Claim

Doe contends that the trial court erred when it dismissed her intentional tort claims for lack of subject matter jurisdiction because the substance of her allegations of assault, battery, and intentional infliction of emotional distress are unrelated to medical care and were not designed to promote Jane Doe's health. Further, she asserts that King's conduct does not call into question his skill or expertise as a medical professional, and thus her allegations are not subject to the requirements of the Act.

We address whether certain deliberate wrongs committed by a qualified health care provider during a patient's medical care, treatment, or confinement in a health care facility are "health care" or "professional services rendered" within the meaning of the Act.[3] It is undisputed that both the Hospital and King, as an employee of the Hospital, are qualified health care providers. *See* I.C. 27–12–2–14.

For the purposes of this appeal, malpractice is a tort based on health care or professional services rendered by a health care provider, to a patient. I.C. 27–12–2–18. A tort is a legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury or damage to another.

---

2. The Hospital and King filed separate Appellee's Briefs. We will refer separately to the arguments of the Hospital and King unless it is appropriate to refer to them jointly as "the Appellees."

3. King asserts:
   [l]ike other plaintiffs' counsel before him [sic], Doe's counsel has attempted to avoid the financial limitations and requirements of the Act by clever pleading. However, Doe cannot metamorphose the operative allegations of malpractice into nonmalpractice through creative drafting.
   King's Appellee's Brief at 6; *see id.* at 10–11. While such argument does not specifically offend the Appellate Rules, this needlessly quarrelsome argument trivializes the serious issue before us.

I.C. 27–12–2–28. Health care is an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement. I.C. 27–12–2–13.

■ The Act does not specifically exclude intentional torts from the definition of malpractice, *Van Sice v. Sentany* (1992), Ind. App., 595 N.E.2d 264, 266; however, the Act pertains to curative or salutary conduct of a health care provider acting within his or her professional capacity, and is designed to exclude that conduct " 'unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment.' " [4] *Boruff v. Jesseph* (1991), Ind. App., 576 N.E.2d 1297, 1298 (quoting *Collins v. Thakkar* (1990), Ind.App., 552 N.E.2d 507, 510, *trans. denied* ). Further, we have specifically held that we are guided by the substance of a claim to determine the applicability of the Act. *Van Sice*, 595 N.E.2d at 266; *see St. Anthony Medical Ctr. v. Smith* (1992), Ind.App., 592 N.E.2d 732, 736, *trans. denied.*

■ Doe's allegations, that King coerced Jane Doe, a minor, to engage in sexual intercourse causing her to contract a venereal disease, do not constitute a rendition of health care or professional services. *See Collins*, 552 N.E.2d at 511. The alleged acts, although occurring during Jane Doe's confinement in the Hospital for psychiatric care and treatment, were not designed to promote her health. Neither do they call into question King's use of skill or expertise as a health care provider.

■ The Appellees rely on the location and time of King's conduct to establish that Doe's claims fall within the scope of the Act; however, the fact that conduct occurs in a health care facility or during a continuous course of treatment cannot, by itself, transmute the conduct into rendition of health care or professional services. The location of an occurrence does not determine whether it falls within the purview of the Act absent some causal connection between the conduct and the nature of the patient-health care provider relationship. As in *Van Sice*, we look to the substance of the claim to determine the applicability of the Act. *Van Sice*, 595 N.E.2d at 266; *see also Lindheimer v. St. Paul Fire & Marine Ins.* (1994), Fla. App., 643 So.2d 636, *reh'g denied.* Doe's allegations do not describe professional services, rather they present "factual issues capable of resolution by a jury without application of the standard of care prevalent in the local medical community." [5] *Collins*, 552 N.E.2d at 511; *see also Methodist Hosp. v. Ray* (1990), Ind.App., 551 N.E.2d 463, *trans. granted and opinion adopted by* Ind., 558 N.E.2d 829 (allegations of ordinary premises liability not governed by Act); *Midtown Community Mental Health Ctr. v. Estate of Gahl* (1989), Ind.App., 540 N.E.2d 1259, *trans. denied* (third party claims of negligent care and failure to warn, which were neither derived from patient nor brought for patient's benefit are outside of Act); *Collins*, 552 N.E.2d at 511 (physician's induction of abortion without patient's consent is outside of Act); *Winona Memorial Found. v. Lomax* (1984), Ind.App., 465 N.E.2d 731 (allegation of premises liability, which did not allege that the injury resulted from malpractice or a

**4.** This concept is emphasized by I.C. 27–12–2–14: "Coverage for a health care provider qualified under this subdivision is limited to its health care functions and does not extend to other causes of action."

**5.** The Hospital argues that
Even if this Court accepts Doe's argument that no expert testimony is necessary to establish a breach of the appropriate standard of care in the present case, Doe cannot seriously contend that no expert medical testimony is necessary to determine whether King's conduct was or was not a factor of Doe's claimed damages and, if so, whether Doe suffered any disability and the extent and duration of the disability

and any impairment and the percentage of the impairment. Since such conclusions are outside the common experience of lay jurors, the opinion of the medical review panel is necessary.
Hospital's Appellee's Brief at 28–29. This meritless argument taken to an extreme suggests that every claim requiring expert medical testimony should be within the purview of the Act. In addition, the Hospital neglects to provide citation to authority in support of this claim; thus, consideration of this issue has been waived. Ind.Appellate Rule 8.3(A)(7); *J.L. v. Mortell* (1994), Ind. App., 633 N.E.2d 300, 303, *trans. denied.*

failure to render appropriate medical care, is outside Act).

The facts at bar can also be distinguished from those in *Boruff* and *Van Sice,* in which we held that intentional torts, by virtue of their names alone, do not remove allegations from the purview of the Act. In *Boruff,* the allegations concerned conduct specifically included within the Act: surgical assignments and conduct during an operation are related to the promotion of a patient's health and the physician's professional services. *Boruff,* 576 N.E.2d at 1298. Similarly, in *Van Sice,* the allegation of fraud questioned whether a course of treatment was medically proper under the appropriate standard of care, and the battery claim questioned a breach of duty to obtain a patient's consent. *Van Sice,* 595 N.E.2d at 266–67. Unlike *Boruff* and *Van Sice,* Doe's allegations of coerced sexual intercourse with a minor patient resulting in her contracting a venereal disease cannot be recast to speak in the language of medical malpractice. Any attempt to include Doe's allegation of intentional felonious conduct as malpractice would force an overly broad construction of the Act which would ultimately produce absurd results.[6] *See Lomax,* 465 N.E.2d at 734–35.[7]

The Appellees claim that King's conduct was based upon his professional services as a mental health counselor. They argue that Doe's complaint alleges medical malpractice because King, as a "Mental Health Counselor," is a therapist for which the transference phenomenon is an occupational hazard. Doe responds that the transference phenomenon has a very limited application and does not pertain to King.

This court first examined the transference phenomenon in *Collins v. Covenant Mut. Ins.* (1992), Ind.App., 604 N.E.2d 1190, which was later vacated by our supreme court, *Collins v. Covenant Mut. Ins.* (1994), Ind., 644 N.E.2d 116. The theory was also discussed in *Dillon v. Callaway* (1993), Ind.App., 609 N.E.2d 424, *trans. denied,* which relied heavily on our opinion in *Collins v. Covenant Mut. Ins.*

Prior to *Collins v. Covenant Mut. Ins.,* Indiana courts had not addressed whether a health care provider's sexual conduct with a patient is actionable as medical malpractice. A survey of other jurisdictions reveals that the general rule is that a physician's sexual relationship with a patient does not constitute a rendition of health care services, and is thus not actionable as medical malpractice. *See St. Paul Fire & Marine Ins. v. Quintana* (1988), 165 Mich.App. 719, 419 N.W.2d 60, 62, *appeal denied; South Carolina Medical Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry* (1987), 291 S.C. 460, 354 S.E.2d 378, 380–81; *Washington Ins. Guar. Ass'n v. Hicks* (1987), 49 Wash.App. 623, 744 P.2d 625, 627; *Standlee v. St. Paul Fire & Marine Ins.* (1984), 107 Idaho 899, 693 P.2d 1101, 1102; *Hirst v. St. Paul Fire & Marine Ins.* (1984), 106 Idaho 792, 683 P.2d 440, 444;

---

**6.** The Hospital mistakenly maintains that when a complaint raises theories both included in and excluded from the Act, the trial court must look to the main thrust of the complaint to determine whether it is based primarily upon medical malpractice. It argues that the main thrust of Doe's complaint is medical malpractice and recites numerous paragraphs from Doe's Amended Complaint. *See* Hospital's Appellee's Brief at 16–19. Perhaps the Hospital has overlooked that Doe conceded, in her Memorandum in Opposition to Defendant's Motion to Dismiss and the Hospital acknowledged without objection, in its Reply to Plaintiff's Memorandum in Opposition, that a portion of Doe's allegations fell within the purview of the Act. Except for three paragraph fragments, the paragraphs recited in Hospital's Brief are contained in the conceded counts. Thus, those paragraphs cannot support the Hospital's theory and this argument is without proof or merit.

**7.** *Lomax* specifically warns against the absurd results that could come from over broad interpretations of the Act.

For example, under [an over broad] construction of the Act, all of the following claims would be subject to the requirements and procedures of the Act: (1) the claim of a patient who was injured when a light fixture fell on him in his hospital bed; (2) the claim of an ambulatory patient who, while walking down a hospital hallway with a visiting friend, was injured when he slipped and fell on soapy water left on the floor by a hospital janitor, even though the visitor's claim would not be subject to the Act if he also fell and was injured; (3) the claim of a patient who was slandered by a hospital employee; and (4) the claim of a patient who was assaulted by a hospital employee.

*Lomax,* 465 N.E.2d at 734–35.

*Smith v. St. Paul Fire & Marine Ins.* (1984), Minn., 353 N.W.2d 130, 132. However, a number of jurisdictions have concluded that a psychiatrist's sexual relationship with a patient is conduct covered by professional liability insurance policies and can constitute malpractice. *See L.L. v. Medical Protective Co.* (1984), 122 Wis.2d 455, 362 N.W.2d 174, 176, *rev'd denied; St. Paul Fire & Marine Ins. v. Mitchell* (1982), 164 Ga.App. 215, 296 S.E.2d 126, 127–28; *Cotton v. Kambly* (1980), 101 Mich.App. 537, 300 N.W.2d 627, 628–29; *Anclote Manor Found. v. Wilkinson* (1972), Fla.App., 263 So.2d 256, 258. Further, jurisdictions have recognized claims for therapist malpractice when a therapist engages in sexual conduct with a patient of the therapist. *See Sisson v. Seneca Mental Health Council* (1991), 185 W.Va. 33, 404 S.E.2d 425, 429 (list of jurisdictions that support malpractice action where counselor engages in sexual conduct with patient during therapy); *MacClements v. LaFone* (1991), 104 N.C.App. 179, 408 S.E.2d 878, 880, *review denied,* (1992), 330 N.C. 613, 412 S.E.2d 87 (mishandling transference in therapeutic relationship is malpractice); *St. Paul Fire & Marine Ins. v. Love* (1989), Minn.App., 447 N.W.2d 5, 8, *rev. granted, aff'd,* (1990), Minn., 459 N.W.2d 698, 701–02 (psychologist malpractice); *Corgan v. Muehling* (1988), 167 Ill.App.3d 1093, 118 Ill.Dec. 698, 701–02, 522 N.E.2d 153, 156–57 (citing cases recognizing malpractice by psychologists, psychiatrists, and therapists, when counselor mishandles transference and becomes sexually involved with a patient); *Rowe v. Bennett* (1986), Me., 514 A.2d 802, 804 (social worker malpractice); *Horak v. Biris* (1985), 130 Ill.App.3d 140, 85 Ill.Dec. 599, 603, 474 N.E.2d 13, 17 (social worker malpractice); *Andrews v. United States* (1984), 4th Cir., 732 F.2d 366, 371 (physician's assistant who counseled patient for depression committed medical malpractice by sexual conduct that was part of patient's therapy); *Cotton,* 300 N.W.2d at 628–29 (doctor who induced patient to engage in sexual conduct under the guise of psychiatric treatment committed malpractice).

The court in *Simmons v. United States* (1986), 9th Cir., 805 F.2d 1363, determined that a malpractice claim could be based upon the professional relationship of a mental health counselor and his patient which utilized and misused the transference phenomenon as a professional method of treatment. That court explained:

> Transference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is "generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past." ... Transference is crucial to the therapeutic process because the patient "unconsciously attributes to the psychiatrist or analyst those feelings which he may have repressed towards his own parents.... [I]t is through the creation, experiencing and resolution of these feelings that [the patient] becomes well." ... "Understanding of transference forms a basic part of the psychoanalytic technique."

*Id.* at 1364–65 (citations omitted).

*Simmons* was cited with approval in *Love,* in which a Minnesota court found that "the centrality of the transference to therapy makes it impossible to separate an abuse of transference from the treatment itself." *Love,* 447 N.W.2d at 8.[8] "It is the mishandling of transference, and not the resulting sexual conduct, which gives rise to the alleged malpractice." *Id.* at 9. Again, quoting from *Simmons:*

> The crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative of a patient than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon.

*Id.* at 1366.

Central to these opinions, and basic to actionable medical malpractice premised on

---

**8.** *Love* was cited and quoted extensively in both *Collins,* 604 N.E.2d at 1190, and *Dillon,* 609

N.E.2d at 426–27.

the misuse of the transference phenomenon, is the existence of the therapist-patient relationship.

Turning to the allegations before us, Doe's complaint does not contend that there was a therapist-patient relationship between Jane Doe and King, nor does Doe allege that the behavior occurred as a result of psychiatric treatment or counseling conducted by King. In addition, the trial court could not infer that King was a therapist for whom the transference phenomenon is an occupational hazard from the evidence of his prior employment as a desk clerk, production worker and hospital volunteer. Because we look to the substance of a claim to determine applicability of the Act, Doe's reference to King as a mental health counselor in her complaint is insufficient, by itself, to remove her claim from the jurisdiction of the trial court and place it within the purview of the Act. *Van Sice,* 595 N.E.2d at 266.

Lacking a therapist-patient relationship, King's sexual conduct with Jane Doe cannot constitute a rendition of health care or professional services, and thus does not give rise to an actionable claim of medical malpractice.

### C.  *Conclusion*

Under the facts alleged in Doe's complaint, the trial court erred as a matter of law when it found that Doe's claim fell within the scope of the Act and dismissed her complaint for want of subject matter jurisdiction. We remand this action to the trial court for proceedings in accordance with this decision.

CHEZEM and ROBERTSON, JJ., concur.