Cherilynn **GRZAN**, Appellant–Plaintiff,

v.

**CHARTER HOSPITAL OF NORTHWEST INDIANA** and an employee, Simon Greer, Appellees–Defendants.

No. 45A04–9802–CV–82.

Court of Appeals of Indiana.

Dec. 11, 1998.

Ivan E. Bodensteiner, Valparaiso, Earl I. Studtmann, Portage, for appellant-plaintiff.

Kathleen M. Maicher, Carl A. Greci, Spangler, Jennings & Dougherty, P.C., Merrillville, for appellees-defendants.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Cherilynn Grzan, a former psychiatric inpatient at Charter Hospital of Northwest Indiana ("Charter") seeks review of the trial court's grant of summary judgment in favor of Charter and partial summary judgment in favor of Simon Greer, a mental health counselor at Charter, on Grzan's medical malpractice and negligence claims based on the mishandling of the transference phenomenon.[1]

We affirm in part and reverse and remand in part.

### ISSUES

I. Whether a genuine issue of material fact exists precluding summary judgment in favor of Greer on Grzan's malpractice and negligence claims based on Greer's alleged mishandling of the transference phenomenon.

II. Whether Charter can be liable to Grzan under the doctrine of respondeat superior as a result of Greer's sexual conduct with Grzan.

III. Whether the trial court erred by entering summary judgment on Grzan's claim based on negligent retention and supervision.

IV. Whether Grzan's complaint was broad enough to encompass a claim that Charter breached a non-delegable duty to care for and protect Grzan from injury.

1. Greer has failed to file an Appellee's Brief.

## FACTS

On March 6, 1992, Cherilynn Grzan voluntarily admitted herself to Charter as a patient for psychiatric treatment and care. Upon her admission at Charter, Grzan was suicidal and depressed. She was diagnosed with suffering from "major depressive episode," "borderline personality disorder," and "post-traumatic stress disorder," (R. 1009), and initially placed on suicide precautions. Psychiatrist Skenarz treated Grzan during her stay at Charter. Grzan was discharged from Charter on April 14.

Simon Greer, a full-time probation officer, was employed at Charter as a part-time "mental health counselor" at a wage of $9.00 per hour during Grzan's hospitalization. He worked in Charter's "PRN Pool," which meant that Charter did not schedule him to work on a regular basis but called him to work as needed. Although not required for his position, Greer had a bachelor's degree in social work. However, he did not have any license or certification to practice psychotherapy.

As a mental health counselor at Charter, Greer assisted and performed tasks as assigned by the registered nurse or charge nurse on his unit and reported to the program administrator. Greer also supervised patients in the gymnasium. In addition, Greer conducted one-on-one and group sessions with patients, including Grzan. One-on-one sessions consisted of Greer "sitting down and chatting, discussing various topics and issues" with Charter patients. (R. 1055). After one-on-one sessions, Greer recorded his observations of the patient's mood and mood changes. During group sessions, which consisted of ten to fourteen patients, Greer was responsible for overseeing the group and acting as a chairperson to keep the patients orderly as they discussed their feelings and emotions. Greer was responsible for recording his observations in a log. At no time did Greer provide patients with any diagnosis, prognosis, or treatment plan for their psychological disorders.

According to Grzan, Greer entered into an emotional and sexual relationship with her during her stay at Charter, thereby violating Charter's written policy prohibiting employees from dating or fraternizing with its patients or discharged patients. The sexual relationship allegedly began after Greer made repeated sexual advances toward Grzan during her second week of hospitalization. On at least five occasions, Greer went into Grzan's room to hug and kiss her while the staff was meeting. Greer also arranged to secretly meet Grzan in the art room where they engaged in hugging, kissing, fondling, and oral sex. These encounters lasted approximately five to fifteen minutes. On two occasions shortly before her discharge, Grzan allegedly had sexual intercourse with Greer at Greer's apartment in Gary after she received passes to leave hospital grounds. Neither Grzan nor Greer informed hospital staff members of their relationship.[2]

At some point, however, Grzan informed Toni Hensley, a patient at Charter, of her relationship with Greer. Hensley subsequently informed Charter mental health counselor Carole Panayi of the relationship.[3] In response, Panayi told Hensley that if such a relationship did exist, Grzan "should follow-up and voice a complaint." (R. 425). Greer's supervisor and other staff members were aware of rumors of the relationship.

Prior to her discharge, Grzan made arrangements to stay at Greer's apartment until she was able to live in a halfway house. Grzan, however, told her psychiatrist and family members that she would be residing at her townhouse in Merrillville. After her discharge on April 14, Grzan moved into Greer's apartment and continued her relationship with him. In June 1992, Greer rented an apartment for Grzan. Grzan moved out of the apartment after approximately one month.

In July 1992, Hensley's husband called Charter's administrator regarding allegations that Greer was having contact with a former patient of Charter. In September 1992, Barry Woodward, the chief executive officer of

---

2. In his deposition, Greer denied having a sexual relationship with Grzan.

3. The designated materials do not disclose when Panayi was informed of the relationship between Greer and Grzan.

Charter, received an anonymous note indicating that Greer had been "dating and living with a former patient." (R. 541). On September 15, 1992, Hensley's husband informed Woodward of the allegations regarding Greer, and an investigation ensued. Charter subsequently suspended Greer pending the outcome of the investigation. Greer resigned before Charter concluded the investigation.

On March 17, 1994, Grzan filed a complaint against Greer and Charter based upon Greer's alleged sexual relationship with her. On May 21, 1997, Greer filed a motion for summary judgment on all claims raised by Grzan's complaint. On June 25, 1997, Charter filed a motion for summary judgment. In response, Grzan submitted an affidavit of psychologist Barbara Seldin who opined that Greer was Grzan's therapist, that the psychological phenomenon known as transference had occurred, and that Greer mishandled the transference.

The trial court entered an order granting summary judgment in favor of Charter. The trial court also entered partial summary judgment in favor of Greer on Grzan's malpractice claim against him. However, the trial court determined that genuine issues of material fact precluded summary judgment in Greer's favor on Grzan's assault and battery claim.

### DECISION

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. *Five Star Concrete, L.L.C. v. Klink, Inc.*, 693 N.E.2d 583, 585 (Ind.Ct.App. 1998). Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations set forth in his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992).

We note that the trial court entered specific findings of fact and conclusions of law with its summary judgment order. However, our standard of review is unchanged by the entry of findings and conclusions. *Chicago Southshore & South Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 629 (Ind.Ct.App.1995). Specific findings aid appellate review, but they are not binding on this court. Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Id.* We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Id.* Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the designated material. *Murphy v. Mortell*, 684 N.E.2d 1185, 1187 (Ind.Ct.App.1997), *trans. denied.*

### I. Malpractice and Negligence Against Greer

■ Grzan contends that the trial court erred by granting summary judgment in favor of Greer on her claims of psychotherapy malpractice and negligence based upon Greer's alleged mishandling of the transference phenomenon. We disagree.

■ Malpractice is a form of negligence and requires proof of the following elements: (1) that the health care provider owed a duty to the patient; (2) that the health care provider breach that duty; and (3) that the breach proximately caused the patient's injuries. *See Mayhue v. Sparkman*, 653 N.E.2d 1384, 1386 (Ind.1995). In malpractice cases, health care providers must exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class acting under the same or similar circumstances. *Vergara v. Doan*, 593 N.E.2d 185, 187 (Ind.1992). For purposes of this appeal, it is undisputed that both Charter and Greer, as an employee of Charter, are qualified health care providers. *See* Ind.Code § 27–12–2–14.

■ The Indiana Medical Malpractice Act, Ind.Code § 27–12–1–1 *et. seq.* (recodified at Ind.Code § 34–18–1–1 *et. seq.*) (hereinafter "the Act"), provides that malpractice is a tort based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient. Ind.Code § 27–12–2–18. "Health care" is defined as an act or treatment per-

formed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement. Ind.Code § 27–12–2–13. Therefore, the Act is limited to curative or salutary conduct of a health care provider acting within his or her professional capacity, and is designed to exclude that conduct "unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment." *Murphy,* 684 N.E.2d at 1188 (citations omitted). Finally, the fact that conduct occurs in a health care facility cannot, by itself, change the alleged conduct into the rendition of health care or professional services. *Id.* Rather, the location of the occurrence does not determine whether it falls within the purview of the Act absent some causal connection between the conduct and the nature of the patient and health care provider relationship. *Id.* Here, we must determine whether Greer's conduct of engaging in an emotional and sexual relationship with Grzan constitutes a rendition of health care or professional services within the meaning of the Act.

Grzan alleges that the designated material reveals that Greer, as a mental health counselor, rendered health care or professional services as a "therapist" and engaged in malpractice by mishandling the transference phenomenon. In response, Charter claims that malpractice based on the mishandling of the transference phenomenon is inapplicable as a matter of law because Grzan and Greer did not have a patient-therapist relationship which could give rise to a duty to properly handle the phenomenon.

In *Doe by Roe v. Madison Center Hosp.,* 652 N.E.2d 101, 105 (Ind.Ct.App.1995), we noted that a survey of other jurisdictions revealed that the general rule is that a physician's sexual relationship with a patient does not constitute a rendition of health care services, and is thus not actionable as medical malpractice. However, we recognized that a number of jurisdictions have permitted patients to maintain malpractice actions against psychiatrists and other psychotherapists when such therapists mishandle the transference phenomenon and engage in sexual conduct with their patients. *Id.* at 106.

Transference is a term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist. The transference phenomenon generally refers to the process whereby the patient unconsciously displaces onto the psychotherapist feelings, attitudes and attributes which properly belong to a significant attachment figure of the past, usually a parent, and responds to the therapist accordingly. *Id.; see also Dillon v. Callaway,* 609 N.E.2d 424, 427 (Ind.Ct.App. 1993). It is through the creation, experiencing and resolution of these feelings that the patient becomes well. *Madison Center,* 652 N.E.2d at 106. Transference, caused by the treatment itself, is crucial to the therapeutic process, and the "[u]nderstanding of transference forms a basic part of the psychoanalytic technique." *Id.* (citation omitted). The centrality of the transference to therapy makes it impossible to separate an abuse of transference from the treatment itself. *Id.* "It is the mishandling of transference, and not the resulting sexual conduct, which gives rise to the alleged malpractice." *Id.* (citation omitted).

Basic to actionable malpractice premised on the misuse of the transference phenomenon is the existence of the therapist-patient relationship. *Id.* In *Dillon,* this court used the term "therapist," for purposes of determining whether the transference phenomenon was operational, to refer to "psychologists, psychiatrists or other professionals who held themselves out as engaging in psychotherapy or counseling therapy for marital, family and sexual problems." 609 N.E.2d at 427 (referring to language in *St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698, 699 (Minn.1990)). In Indiana, individuals engaging in the practice of psychotherapy are required to be licensed psychiatrists, psychologists, certified clinical social workers, or certified marriage and family therapists. *See* Ind.Code §§ 22–22.5–1–1 *et. seq.* (physicians licensed to practice medicine); 25–33–1–1 *et. seq.* (psychologists); 25–23.6–1–1 *et. seq.* (certified social workers and certified marriage and family therapists).

In the present case, the designated materials reveal that Greer is not a psychiatrist, psychologist, clinical social worker, or any other professional licensed or certified to engage in the practice of psychotherapy, and Grzan does not state that Greer held himself out as one. Further, the designated evidence reveals that Greer had no formal training in and knowledge of psychotherapeutic principles such as transference. Indeed, there is no evidence that Greer had ever attempted to engage in psychotherapy or utilize transference as a psychotherapeutic technique with Grzan. In group sessions which Grzan attended, Greer would merely oversee the group and act as a chairperson to keep the group orderly as they discussed their feelings and emotions. There is also no evidence that one-on-one sessions between Greer and Grzan were predicated upon Greer's use of transference. Furthermore, Greer did not analyze or prescribe treatment for Grzan's mental disorders. Accordingly, the trial court properly concluded that no patient-therapist relationship existed between Grzan and Greer.

Absent a therapist-patient relationship, Greer's sexual conduct with Grzan is too remote from the actual rendition of professional services and does not call into question Greer's use of skill or expertise as a health care provider. Accordingly, his conduct cannot constitute a rendition of health care or professional services. *See Madison Center,* 652 N.E.2d at 107. The trial court correctly determined that, as a matter of law, Greer's conduct did not fall within the scope of the Act.[4]

■ Grzan also summarily contends that the trial court erred by entering summary judgment in favor of Greer on her negligence claim based on Greer's mishandling of the transference phenomenon. In effect, she requests that we find that Greer, as a lay person, had a legal duty to properly handle transference. However, Grzan has failed to make any references to the record or cite any authority in support of her contention. Therefore, she has waived appellate review of this contention. *See* Ind. Appellate Rule 8.3(A)(7).

## II. *Respondeat Superior Liability of Charter*

■ Grzan argues that Charter is liable under the doctrine of respondeat superior for Greer's malpractice and negligence occurring in the course of Greer's employment. Under the doctrine of respondeat superior, a master or principal is chargeable with, and liable for, any negligent act committed by his servant or agent while such servant or agent is acting in the course of his employment and in the line of his duty. *United Farm Bureau Mutual Ins. Co. v. Blossom Chevrolet,* 668 N.E.2d 1289, 1291 (Ind.Ct.App.1996). However, once the servant or agent is released of liability, no negligence can be imputed to the principal. *Id.* Because we have concluded that the trial court properly entered summary judgment in favor of Greer on Grzan's claims of malpractice and negligence, Charter cannot be held liable under the doctrine of respondeat superior.

## III. *Charter's Liability—Negligent Retention and Supervision*

■ Grzan also alleges that factual disputes preclude summary judgment on her claim that Charter is liable for negligent retention and supervision of Greer because it knew or should have known of Greer's misconduct of engaging in a sexual relationship with Grzan.[5]

**4.** In support of her argument that the record supports an inference that Greer was a therapist providing therapy, Grzan relies upon the deposition and affidavit of Dr. Seldin. Dr. Seldin concluded that Greer was Grzan's therapist and that Greer utilized and mishandled the transference phenomenon. However, Dr. Seldin's conclusions were based upon her opinion that anyone whose purpose is to interact with patients, including nurses, functions as a counselor and therapist. Her definition of therapist, however, is clearly broader than the definition contemplat-

ed by our prior decisions. *See, i.e., Dillon,* 609 N.E.2d at 427; *Madison Center,* 652 N.E.2d at 105–07. Accordingly, we find Dr. Seldin's conclusions insufficient to create a genuine issue of material fact precluding summary judgment.

**5.** We note that the trial court's summary judgment order does not expressly address the issue of Grzan's claims of negligent retention or supervision. Further, Charter has failed to specifically address this issue raised by Grzan except to summarily state that "Grzan's arguments con-

Indiana recognizes a cause of action for negligent retention of an employee, and has adopted the Restatement (Second) of Torts § 317 as the standard with respect to this tort. *Konkle v. Henson,* 672 N.E.2d 450, 454 (Ind.Ct.App.1996). When determining if an employer can be liable for negligent retention of an employee, the court must determine if the employer exercised reasonable care. *Id.* at 454. To prevail on her claim, Grzan must show that the Charter knew or had reason to know of Greer's misconduct and failed to take appropriate action. *See id.* at 460.

Here, it is undisputed that neither Greer nor Grzan personally informed any Charter staff of their relationship prior to Grzan's discharge from Charter. However, nurse Larry Echols stated in his affidavit that "[w]hile Cherilynn Grzan was a patient a[t] Charter Hospital [March and April of 1992], it was rumored that Simon Greer was involved in a personal relationship with Cherilynn Grzan. Members of the staff, including me, and patients were aware of this rumored inappropriate personal relationship." (R. 537). Further, Grzan indicated in her deposition that Kate McBride, a Charter employee, appeared as though "she was uncomfortable leaving us alone." (R. 741). We find this evidence to be sufficient to raise a question of fact about whether Charter knew or should have known of Greer's improper sexual conduct with Grzan. Accordingly, the trial court erred in entering summary judgment on Grzan's claim for negligent retention and supervision.

## IV. Sufficiency of Pleadings to Assert Theory of Non–Delegable Duty

On March 17, 1994, Grzan filed her complaint. In response to Charter's motion for summary judgment filed on June 25, 1997, Grzan asserted that summary judgment was improper, in part, because Charter owed her a non-delegable duty under the common carrier exception to respondeat superior liability.[6] On August 11, 1997, at the hearing on summary judgment, Charter claimed Grzan's complaint did not encompass the theory of non-delegable duty. Grzan argued that the non-delegable duty theory of liability was sufficiently pleaded in the complaint. Alternatively, Grzan made an oral motion for leave to amend her complaint in the event that the trial court found that the complaint did not encompass such a theory. (R. 1271). Grzan later filed a motion to amend her complaint to expressly allege that Charter owed her a non-delegable duty of care, which the trial court denied.

On appeal, Grzan claims her complaint was sufficiently pleaded to encompass the theory of non-delegable duty. We agree.[7] The principles of notice pleadings are utilized in Indiana. *Miller v. Memorial Hosp. of South Bend,* 679 N.E.2d 1329, 1332 (Ind.1997). Ind. Trial Rule 8(A) merely requires "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for the relief to which the pleader deems entitled...."[8]

---

tained under issue four of her brief simply miss the mark." Appellee's Brief, p. 29.

6. In *Stropes v. Heritage House Childrens Ctr.,* 547 N.E.2d 244, 251 (Ind.1989), we summarized the key concepts of non-delegable duties and the common carrier exception to the doctrine of respondeat superior as follows:

First, once one has, by contract or otherwise, assumed the duty to protect another, the nature of that duty may be such that the responsibility for providing the protection cannot be delegated even though the protective tasks themselves are.... Second, where an employer has assumed a non-delegable duty to protect a person and his employee inflicts injury on that person, the doctrine of respondeat superior will not interdict the imposition of liability on the employer even if the wrongful act was outside the scope of employment.

7. Because we conclude that Grzan's complaint was sufficiently pleaded to encompass the theory of non-delegable duty, we need not address her contention that the trial court erred in denying her motion to amend her complaint to include such a theory.

8. T.R. 8(A) is representative of the changes that took place in 1970 when Indiana moved from code, or theory, pleading to the system of notice pleading. *See Noblesville Redevelopment Comm'n. v. Noblesville Associates, Ltd.,* 674 N.E.2d 558, 563 (Ind.1996) (citing *Palacios v. Kline,* 566 N.E.2d 573, 576 (Ind.Ct.App.1991)). Theory pleading required the complaint to delineate a specific legal theory to which the plaintiff would adhere throughout the trial. *Id.*

Ind. Trial Rule 8(F) provides that "all pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points." Notice pleading is designed to "discourage battles over mere form of statement and to sweep away needless controversies that have occurred either to delay trial on the merits or to prevent a party from having a trial because of mistakes in statement." *Miller*, 679 N.E.2d at 1332 (citation omitted). Further, it is well established that our notice pleading rules do not require that the complaint state all the elements of a cause of action. *Id.; see also State v. Rankin*, 260 Ind. 228, 231, 294 N.E.2d 604, 606 (Ind.1973). A plaintiff essentially need only plead the operative facts involved in the litigation. *Miller*, 679 N.E.2d at 1332. "Therefore, under notice pleading the issue of whether a complaint sufficiently pleads a certain claim turns on 'whether the opposing party has been sufficiently notified concerning the claim ... so as to be able to prepare to meet it.'" *Noblesville Redevelopment Comm'n v. Noblesville Associates, Ltd.*, 674 N.E.2d 558, 563–64 (Ind.1996) (citation omitted). A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues. *Id.* at 564.

In the present case, although the complaint does not expressly allege that Charter owed her a non-delegable duty of care, the complaint alleged that Grzan sought medical and psychiatric care and treatment from Charter and that Charter negligently cared for and treated her based upon Greer's sexual relationship with her while she was in a vulnerable condition and undergoing treatment at Charter. The complaint further alleges that Charter knew or should have known of Greer's sexual relationship during her hospitalization. We find that these operative facts are sufficient to encompass the theory of non-delegable duty and to put Charter on notice as to why Grzan was suing. The trial court erred in concluding that the complaint was not sufficiently pled to encompass the theory of Charter's non-delegable duty to protect Grzan from harm.[9]

*CONCLUSION*

In conclusion, we affirm the trial court's entry of summary judgment in favor of Greer and Charter on Grzan's claims of malpractice and negligence based on the mishandling of the transference phenomenon. However, a genuine issue of material fact precludes summary judgment on Grzan's claim that Charter is liable for negligent retention and supervision. Finally, Grzan's complaint was broad enough to encompass the theory that Charter owed her a non-delegable duty to care and protect her from Greer's conduct.

We affirm in part and reverse and remand in part.

BAKER and BAILEY, JJ., concur.

---

**9.** Charter, citing *Konkle v. Henson*, 672 N.E.2d 450, 456 n. 7 (Ind.Ct.App.1996), argues that because Grzan did not specifically allege that it owed her a non-delegable duty of care, her complaint does not support this theory of liability. In *Konkle*, Konkle raised the issue of whether the several defendants' owed a non-delegable duty. A panel of this court noted that this theory was a separate and distinct theory of liability from respondeat superior, which Konkle did assert. The Court found that because "Konkle made no allegations that the Church Defendants owed her a non-delegable duty of care," the allegations of Konkle's complaint did not support this theory of liability. *Id.* Unlike *Konkle*, we find that the allegations contained in Grzan's complaint were sufficient to put Charter on notice as to why Grzan was suing even though Grzan did not specifically allege that Charter owed her a non-delegable duty of care.