**WINONA MEMORIAL HOSPITAL, LIMITED PARTNERSHIP, Republic Health Corporation of Indianapolis, OrNda Health Initiatives, Inc., Tenet Healthcare, Corp., and Tenet Regional Infusion South, Inc., Appellants–Defendants,**

v.

**Sharon KUESTER and Daniel Kuester, Appellees–Plaintiffs.**

No. 49A02–0001–CV–19.

Court of Appeals of Indiana.

Oct. 24, 2000.

---

David D. Becsey, Lakshmi Reddy, Zeigler Cohen & Koch, Indianapolis, Indiana, Attorneys for Appellant.

Morris L. Klapper, Klapper Isaac & Parish, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

MATHIAS, Judge

This interlocutory appeal comes before us pursuant to the trial court's denial of the defendant health care providers' motion to dismiss Sharon Kuester's complaint alleging the negligent credentialing of a doctor whose malpractice allegedly caused injury to her. We accepted jurisdiction to address the following issue:

> Whether a claim against a qualified health care provider for the negligent credentialing of a physician is an action for malpractice subject to the provisions of the Medical Malpractice Act?[1]

By all accounts, this is an issue of first impression in Indiana.

The defendant health care providers (collectively, Winona) contend that negligent credentialing is a tort covered under the Medical Malpractice Act (Act) and, as such, an opinion must be obtained from a medical review panel before a complaint may be filed with the trial court. *See* Ind.Code § 34–18–8–4 (1998). Consequently, Winona argues that Kuester's complaint should have been dismissed because she failed to obtain first an opinion from a medical review panel. Kuester, on the other hand, contends that negligent credentialing is administrative in nature and is, therefore, not subject to the requirements of the Act. We agree with Winona.

### The Language of the Act

The relevant standard of statutory interpretation concerning the Act was established more than fifteen years ago:

> In determining the meaning of statutes[,] there are certain rules which we are bound to follow. It has been consistently held in Indiana that judicial construction of a statute is permissible only where the statute is ambiguous and of doubtful meaning. If the language of the statute is plain and unambiguous, judicial interpretation is inappropriate and the courts will adopt the meaning clearly expressed. If however, a statute is ambiguous and its meaning is not clear from the words used, judicial construction is proper. In such cases, the purpose and goal of judicial construction

1. Oral argument in this cause was heard on August 8, 2000, in Indianapolis.

is to give effect to the intention of the legislature. A statute should be construed to accomplish the end for which it was enacted.

*Winona Memorial Foundation of Indianapolis v. Lomax,* 465 N.E.2d 731, 735 (Ind.Ct.App.1984)(internal citations omitted).

Under the Act, malpractice is defined as a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient. Ind.Code § 34–18–2–18 (1998). The fact that Winona is a health care provider pursuant to the Act is undisputed.

Despite its general comprehensiveness, professional services is not defined in the Act. Winona argues that the act of credentialing is such a professional service, and, therefore, the tortious act of negligent credentialing falls within the meaning of malpractice.

On the other hand, Kuester maintains that in order for conduct to fall within the Act, it must occur in the course of a patient's medical care, treatment, or confinement, and that the Act does not extend to conduct outside this relatively circumscribed timeframe. *Id.* §§ 34–18–2–13 and –14. Kuester asserts that because the alleged negligent credentialing did not occur during her medical care, treatment, or confinement, it is not malpractice under the Act; rather, the alleged negligent credentialing would be more of an administrative act that does not involve health care or professional services.

To determine whether credentialing of a physician is subject to the Act, we are also guided by other relevant Indiana statutes. Under Indiana law, the credentialing of hospital medical staff is performed by each hospital's governing board:

The governing board of the hospital is the supreme authority in the hospital and is responsible for the following:

(1) The management, operation, and control of the hospital.

(2) The appointment, reappointment, and assignment of privileges to members of the medical staff, with the advice and recommendations of the medical staff, consistent with the individual training, experience, and other qualifications of the medical staff.

(3) Establishing requirements for appointments to and continued service on the hospital's medical staff, consistent with the appointee's individual training, experience, and other qualifications, including the following requirements:

(A) Proof that a medical staff member has qualified as a health care provider under I.C. 16–18–2–163(a).

(B) The performance of patient care and related duties in a manner that is not disruptive to the delivery of quality medical care in the hospital setting.

(C) Standards of quality medical care that recognize the efficient and effective utilization of hospital resources, developed by the medical staff.

*Id.* § 16–21–2–5. As this statute makes clear, although the hospital governing board is the supreme authority in the hospital, it depends upon the medical staff for advice and recommendations during some portions of the credentialing process but not during others.

The medical staff's responsibilities are also defined by statute:

The medical staff of a hospital is responsible to the governing board for the following:

(1) The clinical and scientific work of the hospital.

(2) Advice regarding professional matters and policies.

(3) Review of the professional practices in the hospital for the purpose of reducing morbidity and mortality and for the improvement of the care of patients in the hospital, including the following:

(A) The quality and necessity of care provided.

(B) The preventability of complications and deaths occurring in the hospital.

(4) Upon recommendation of the medical staff, establishing protocols within the requirements of this chapter and 410 I.A.C. 15–1.2–1 for the admission, treatment, and care of patients with extended lengths of stay.

Ind.Code § 16–21–2–7 (Supp.1999).

Upon review of the statutory responsibilities of the hospital governing board and the hospital medical staff, it is apparent that the credentialing process actually involves a blend of both medical and non-medical personnel and expertise. Credentialing, therefore, is neither clearly within the Act nor outside of it. For this reason, we hold that the Act is ambiguous with regard to whether the physician credentialing process is included within its ambit. We must therefore construe the Act in order to give effect to the intention of the General Assembly. *Lomax*, 465 N.E.2d at 735.

### The Common Law Interpretation of the Act

■ Submission of a proposed complaint to a medical review panel is a condition precedent to filing a medical malpractice claim in Indiana. *Putnam County Hospital v. Sells*, 619 N.E.2d 968, 970 (Ind.Ct. App.1993) (citing *St. Anthony Medical Center, Inc. v. Smith*, 592 N.E.2d 732, 735 (Ind.Ct.App.1992)). This court noted in *Methodist Hospital of Indiana, Inc. v. Ray*, 551 N.E.2d 463, 468 (Ind.Ct.App. 1990) *adopted on trans.*, 558 N.E.2d 829 (Ind.1990) that:

> [t]his suggests an intent that the panel confine itself to matters of malpractice, where members of the medical profession are naturally qualified as experts. It suggests the reverse side of the coin as well: because they are not qualified as experts (as the term is legally defined) outside the healthcare arena, the panel, and the Malpractice Act by implication, are not equipped to deal with

matters pertaining to ordinary negligence.

Accordingly, Indiana's courts of review have historically determined the applicability of the Act by examining whether the cause of action alleged sounds in medical malpractice or in ordinary negligence. *See generally Doe by Roe v. Madison Center Hospital*, 652 N.E.2d 101 (Ind.Ct.App. 1995); *Sells*, 619 N.E.2d at 968; *Ray*, 551 N.E.2d at 463; *Lomax*, 465 N.E.2d at 731; *Methodist Hospital of Indiana, Inc. v. Rioux*, 438 N.E.2d 315 (Ind.Ct.App.1982). We have consistently held that we are guided by the substance of the claim as pleaded in cases such as this to determine the applicability of the Act. *Doe by Roe*, 652 N.E.2d at 104.

■ In this regard, Kuester alleges in her amended complaint that:

1. At all times pertinent, defendants were engaged in the business of providing hospital care and services, for profit, in Indianapolis, Indiana.

2. At all times pertinent, defendants were under the duty to reasonably investigate the credentials of potential staff physicians and to reasonably inform themselves of the physical and mental conditions, past behavior and performance of those physicians who have requested staff privileges at defendants' hospital.

3. At all times pertinent, defendants were under the duty to grant staff privileges to only those physicians who were competent, sober and in reasonably good mental and physical health.

4. At all times pertinent, defendants were under the duty to retain on their staff of physicians only those physicians who were competent, sober and in reasonably good mental and physical health.

5. On July 30, 1997, Sharon Kuester was seriously injured during the course of surgery at defendants'

hospital, which injuries were caused, at least in part, by the actions of W. Michael Crosby, M.D., who was on the staff of the defendants' hospital.

6. The defendants were negligent in that they violated their duties set out above, which negligence proximately caused injuries to Sharon Kuester.

7. As the result of the negligence of the defendants, Sharon Kuester sustained serious and permanent injuries. She has suffered great pain and suffering, as well as extreme emotional distress, and she has incurred and will continue to incur substantial medical expenses and loss of earning capacity.

R. at 14–5.

Kuester's claim presents a new wrinkle in that she alleges that *two* negligent acts occurred to proximately cause her injury. As pleaded, in order for Kuester to prove the tort of negligent credentialing, she must first establish that a negligent act of Dr. Crosby proximately caused her injury before she can proceed against Winona. As a result, it is inappropriate to look only to the credentialing conduct alleged in the complaint to determine whether it sounds in malpractice or in an ordinary, common law cause of action. The credentialing process alleged must have resulted in a definable act of medical malpractice that proximately caused injury to Sharon Kuester or Kuester is without a basis to bring the suit for negligent credentialing.

When we base our determination on both alleged negligent acts required to recover (i.e., both the credentialing and the malpractice) we have very clear, twenty-year-old precedent that states the intent of the General Assembly. In *Sue Yee Lee v. Lafayette Home Hospital, Inc.,* this court reasoned that:

Viewed from the historical perspective we believe the conclusion is inescapable that *our General Assembly intended that all actions the underlying basis for which is alleged medical malpractice*

*are subject to the act.* [T]he obvious purpose of the act is to provide some measure of protection to health care providers from malpractice claims, and to preserve the availability of the professional services of physicians and other health care providers in the communities and thereby protect the public health and well-being[.]

410 N.E.2d 1319, 1324 (Ind.Ct.App.1980) (emphasis added).

The composition and function of medical review panels supports the inclusion of negligent credentialing within the purview of the Act. Indiana Code § 34–18–10–3 directs that medical review panels are to be composed of three health care providers and an attorney chairperson. The statutory definition of health care provider contained in Indiana Code § 34–18–2–14 includes an organization like Winona or a representative member of Winona's credentialing body. Because the act of credentialing and appointing licensed physicians to its medical staff is a service rendered by the hospital in its role as a health care provider, inclusion of negligent credentialing under the Act is consistent with use of the medical review panel to establish the standard of care owed by Winona in credentialing. *See Ray,* 551 N.E.2d at 463.

Further, we subscribe to the reasoning that, the Act applies to conduct, curative or salutary in nature, by a health care provider acting in his or her professional capacity, and is designed to exclude only conduct which is unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment. *Id.* at 466. We hold that credentialing is directly related to the provision of health care and is, therefore, not excluded from the Act.

For all of these reasons, we hold that a claim for negligent credentialing of a physician is an action for malpractice subject to the Act. In so doing, however, we are mindful of the increasingly strained nature

of Indiana's common law in this area. Since the enactment of the Medical Malpractice Act in 1975, there have been radical changes in the manner in which medical services are delivered to patients, not only in Indiana, but nationally. The rise of HMOs and a more profit-driven health care delivery system were likely not within the contemplation of the General Assembly in 1975. However, the General Assembly remains the appropriate policy-making body to consider the magnitude of this change and commensurate modification of the Act.

### Conclusion

Having accepted jurisdiction, we remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and NAJAM, J., concur.