**FAIRBANKS HOSPITAL, Appellant,**

v.

**Dan HARROLD, Eva Harrold, Natalie Harrold, and Indiana Department of Insurance, Appellees.**

**No. 49A02–0712–CV–1055.**

Court of Appeals of Indiana.

Nov. 6, 2008.

---

Peter H. Pogue, Catherine L. Kyle, Schultz & Pogue, Indianapolis, IN, Attorney for Appellant.

Matthew W. Conner, Tabbert Hahn Earnest & Weddle, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Upon interlocutory appeal, Fairbanks Hospital (Fairbanks) appeals the trial court's determination that a claim filed against it by Dan, Eva, and Natalie Harrold (collectively, the Harrolds) does not fall within the scope of the Indiana Medical Malpractice Act.[1] Upon appeal, we consider the following restated issue: Does a complaint alleging negligent hiring, training, and supervision of a hospital employee fall within the Act if the underlying tort

---

1. Ind.Code Ann. §§ 34–18–1–1 to 34–18–18–2 (West, PREMISE through 2007 1st Regular Sess.).

allegedly committed by that employee was unwanted sexual advances?

We affirm.

For purposes of this appeal, the relevant underlying facts are not in dispute. Eighteen-year-old Natalie Harrold was admitted to Fairbanks for inpatient substance-abuse treatment. The counseling staff admitted Natalie to the adolescent unit of the facility. Although her admission to the facility was voluntary, Natalie was angry about being admitted to the facility on an in-patient basis, and in addition was upset that she was placed in the adolescent unit, as opposed to the adult unit.

While at Fairbanks, from September 15–28, 1997, Natalie underwent comprehensive assessment and therapeutic intervention, including individual and group counseling. During her stay, employee Larry Shears participated in her care. At the time of Natalie's admission, Shears had been recently hired to work at Fairbanks as an Adolescent Guidance Counselor (AGC), and because he was a new hire Shears was serving a probationary period during Natalie's stay. As a condition of employment, Shears had signed an agreement "to refrain from any personal and/or professional relationships with patients for one year after the patient is discharged from treatment." *Appellant's Appendix* at 304. From September 21 through 25, 1997, Shears made a series of unwanted sexual advances toward Natalie, including hugging her, kissing her on the cheek, patting her on the buttocks on more than one occasion, giving her notes and cards, and urging her to call him. After Natalie was discharged, Natalie reported Shears's behavior to a nurse at Fairbanks. Following an internal investigation, Fairbanks terminated Shears's employment.

On January 21, 1999, the Harrolds filed a proposed complaint with the Indiana Department of Insurance (IDI) and a civil lawsuit in the Marion Superior Court. In both instances, the Harrolds submitted a four-count complaint. After detailing Shears's activities relative to Natalie, under Count I the Harrolds alleged negligent supervision against Fairbanks. Under Count II, the Harrolds alleged Shears had committed intentional torts including battery, and under Count III they alleged that Fairbanks was responsible for said torts by virtue of vicarious liability. Under Count IV, the Harrolds sought restitution. The proposed complaint was presented to a medical review panel, which issued an opinion on March 2, 2004. In that opinion, the review panel determined that Fairbanks had failed to comply with the applicable standard of care and that the Harrolds had been damaged thereby.

The Harrolds proceeded with their state court claim. On November 6, 2006, Fairbanks filed a Motion For Determination of Law. In that motion, Fairbanks noted, "Fairbanks is a qualified health care provider under the Indiana Medical Malpractice Act and was provided coverage for the plaintiffs' claim through its professional liability carrier. This case was presented to a Medical Review Panel, which issued an opinion in favor of the plaintiffs." *Id.* at 50. Through its motion, Fairbanks sought a "ruling as a matter of law that plaintiffs' claims fall within the scope of the Indiana Medical Malpractice Act." *Id.* at 51. Also, Fairbanks added the IDI as a necessary party.

The IDI filed a motion in opposition to Fairbanks's request for a determination as a matter of law. Following a hearing, the trial court took the matter under advisement. On October 11, 2007, the trial court denied Fairbanks's motion for preliminary determination, concluding:

Shears's alleged conduct ... does not call into question the use of Shears's skill in rendering any benefit or treat-

ment to Natalie Harrold. Therefore, the "negligent supervision" claim does not include such consideration either.

Our common law clearly finds the Act is not intended to cover claims of ordinary negligence unrelated to patient care, particularly involving sexual misconduct between non-physicians and patients. Indeed, many courts facing similar circumstances outside Indiana have also found "negligent supervision" involving sexual misconduct amounts to ordinary negligence and not medical malpractice. . . .

Therefore, the Act does not cover Harrold's [sic] claim of negligent supervision.

*Id.* at 30–31. On October 22, 2007, Fairbanks filed a petition asking the trial court to certify its order for interlocutory appeal. The trial court granted that request and on December 28, 2007, this court accepted jurisdiction over the interlocutory appeal.

 Our standard of review in this appeal is well settled.

A motion for preliminary determination, when accompanied by evidentiary matters, is akin to a motion for summary judgment and is subject to the same standard of appellate review as any other summary judgment disposition. Upon review of a summary judgment determination, we apply the same standard applied by the trial court: where the evidence shows that there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law, summary judgment is appropriate. We construe all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party.

*Battema v. Booth,* 853 N.E.2d 1014, 1018–19 (Ind.Ct.App.2006) (quoting *Jacobs v. Manhart,* 770 N.E.2d 344, 348–49 (Ind.Ct.

App.2002), *trans. denied* ) (citations omitted), *trans. denied.*

 We begin our analysis by identifying the precise nature of the act or acts that Fairbanks contends falls within the Act. The Harrolds' claims against Fairbanks have changed considerably since they were first filed, or so they contend. Initially, the Harrolds' claim against Fairbanks revolved entirely around Shears's action. That is, after recounting the several specific allegations of misconduct against Shears personally, the Harrolds alleged (1) Fairbanks was liable therefore based upon a claim of negligent supervision, and (2) Fairbanks was liable for Shears's actions based upon the principle of vicarious liability. We note also that Shears was previously dismissed as a defendant in this case during the Medical Review Panel process because he had been discharged in bankruptcy. Fairbanks concedes, "once a servant or agent is released from liability, no negligence can be imputed to the principal" for that negligence. *Appellant's Brief* at 12 n. 3 (citing *Grzan v. Charter Hosp. of Nw. Indiana,* 702 N.E.2d 786 (Ind.Ct.App.1998)). Thus, we are advised by Fairbanks that this case no longer focuses upon Shears's behavior or actions. Rather,

The plaintiffs' claim is based upon whether Fairbanks' supervisory employees made appropriate decisions in selecting individuals who could work effectively with patients, training its employees to engage in appropriate patient contact, and staffing the facility to make sure that each patient's needs were met and patients were appropriately protected. Thus, the underlying conduct at issue is that of the *hospital staff* responsible for hiring, training, and supervising those health care providers who provide patient care. In other words, the Harrolds' claims are based upon Fairbanks'

alleged negligence in making decisions which affected Natalie's health care, and fall within the scope of the Act.

*Appellant's Brief* at 12 (emphasis in original). In fact, in its reply brief, Fairbanks concedes that this appeal involves only the allegations set forth in Count I of Harrolds' complaint, i.e.:

8. Plaintiffs repeat and reallege [sic] all allegations set forth in Paragraphs one (1) through Seven (7).

9. Fairbanks Hospital owed a duty of reasonable care to Plaintiffs to use that knowledge, skill and care that is generally used in similar cases and circumstances by health care facilities in communities having similar medical standards and available facilities to supervise its employees.

10. Fairbanks Hospital failed to use reasonable care in its supervision of Mr. Shears, allowing him the opportunity to make sexual assaults on Natalie during his unsupervised night shift.

11. As a result of Fairbanks Hospital's negligent supervision of Mr. Shears, which resulted in the nighttime sexual assaults, Natalie did not benefit from her treatment at Fairbanks and suffers from emotional distress, and Dan and Eva Harrold have incurred medical expenses.

*Id.* at 261–62. It was these allegations that Fairbanks asked the trial court to declare as constituting allegations of medical malpractice within the contemplation of the Act.

In opposing Fairbanks's request for a determination of law, the IDI argued that the Act does not apply to claims based ultimately upon sexual misconduct committed by the employees of health care providers, citing *Grzan v. Charter Hosp. of Nw. Indiana,* 702 N.E.2d 786; *Murphy v. Mortell,* 684 N.E.2d 1185 (Ind.Ct.App. 1997), *trans. denied;* and *Doe by Roe v.* *Madison Ctr. Hosp.,* 652 N.E.2d 101 (Ind. Ct.App.1995), *trans. dismissed.* The IDI incorporates those cases into its appellate arguments as well. Fairbanks notes, however, that in each of those cases, the gravamen of the complaint, and thus the basis for the argument that the case could be litigated as a medical malpractice action, was that the health care provider/defendant was vicariously liable for its employee's sexual misconduct.

For instance, in *Doe by Roe v. Madison Ctr. Hosp.,* 652 N.E.2d at 107, we concluded that sexual misconduct committed by a mental health counselor/orderly of the hospital did not constitute medical malpractice because, "[l]acking a therapist-patient relationship, [the employee's] sexual conduct with the [patient] cannot constitute a rendition of health care or professional services, and thus does not give rise to an actionable claim of medical malpractice".

In *Murphy v. Mortell,* 684 N.E.2d 1185, a patient was molested by a hospital employee working as a critical care respiratory therapy technician. She ultimately filed a medical malpractice action against the hospital. The IDI claimed the action sounded in general negligence and premises liability, and not in medical malpractice. The trial court agreed, and we affirmed upon our conclusions that: (1) the "allegations that [the employee] molested her did not constitute a rendition of health care or professional services"; (2) "the acts were not designed to promote her health and did not call into question [the employee's] use of skill or expertise as a health care provider"; and (3) they did not "describe professional services", but instead "present[ed] factual issues capable of resolution by a jury without application of the standard of care prevalent in the local medical community." *Id.* at 1188.

In *Grzan v. Charter Hosp. of Nw. Indiana*, the employee in question worked as a mental health counselor at a psychiatric facility, where he assisted and performed tasks as assigned by the registered nurse or charge nurse on his unit and reported to the program administrator. The plaintiff/victim admitted herself to the facility and the employee participated in her care. Eventually, the two engaged in a sexual relationship. The relationship continued after the patient was discharged and the two briefly lived together before the relationship ended. The psychiatric facility subsequently learned about the relationship and suspended the employee pending an investigation. He resigned before the investigation was completed. The patient later filed a lawsuit against the employee and the facility.

In an effort to prove that the complained-of conduct constituted health care within the meaning of the Act, a psychologist filed an affidavit on the patient's behalf stating that the employee was the patient's therapist, that the psychological phenomenon known as transference had occurred, and that the employee had mishandled the transference. The trial court concluded that the patient's claim did not sound in medical malpractice and entered summary judgment to that effect. This court noted that "the Act is limited to curative or salutary conduct of a health care provider acting within his or her professional capacity, and is designed to exclude that conduct 'unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment.'" *Grzan v. Charter Hosp. of Nw. Indiana*, 702 N.E.2d at 791 (quoting *Murphy v. Mortell*, 684 N.E.2d at 1188). The court determined that the employee was not a psychiatrist, psychologist, clinical social worker, or any other professional licensed or certified to engage in the practice of psychotherapy.

Therefore, "[a]bsent a therapist-patient relationship, [the employee]'s sexual conduct with [the patient] is too remote from the actual rendition of professional services and does not call into question [the employee]'s use of skill or expertise as a health care provider. Accordingly, his conduct cannot constitute a rendition of health care or professional services." *Id.* at 792.

In each of the foregoing cases, the plaintiff/patient sought recovery under the Act based upon the allegation that the purported health care provider's offending conduct, i.e., the act of malpractice, was the sexual assault itself. For this reason, we agree with Fairbanks that those cases do not address the issue presented here, i.e., whether an allegation of failure to supervise an employee sufficiently to prevent a sexual assault upon a patient states a claim under the Act. The IDI, however, does cite one case that we deem to be dispositive of the appeal: *Winona Mem'l Hosp., Ltd. P'ship v. Kuester*, 737 N.E.2d 824 (Ind.Ct. App.2000).

 The relevant facts in *Winona* are that the patient/plaintiff alleged that Winona Hospital and affiliated medical providers were negligent in credentialing a doctor whose malpractice caused injury to her. Winona moved to dismiss the complaint on the basis that the patient had failed to comply with the requirement of the Act that a patient first obtain an opinion from a medical review panel. The trial court denied the motion to dismiss and Winona filed an interlocutory appeal. This court took the occasion to address a question of first impression in Indiana, i.e., "[w]hether a claim against a qualified health care provider for the negligent credentialing of a physician is an action for malpractice subject to the provisions of the Medical Malpractice Act?" *Id.* at 825.

There, as here, the court observed that the patient's claim alleged that her injuries were proximately caused by two acts—Winona's negligence in credentialing the doctor in question, and, of course, that doctor's negligence in treating the patient. We observed that, as pleaded, in order for the patient to prove the tort of negligent credentialing, she was first required to establish that a negligent act of the doctor's proximately caused her injury "before she can proceed against Winona." *Id.* at 828. Significantly, for our purposes, the court stated,

> As a result, it is inappropriate to look only to the credentialing conduct alleged in the complaint to determine whether it sounds in malpractice or in an ordinary, common law cause of action. *The credentialing process alleged must have resulted in a definable act of medical malpractice that proximately caused injury to [the patient] or [the patient] is without a basis to bring the suit for negligent credentialing.*

*Id.* (emphasis supplied). We thus learn from Winona that a medical malpractice action cannot become completely unmoored from the provision of what our case law has established is the very essence of health care, i.e., "conduct, curative or salutary in nature, by a health care provider acting in his or her professional capacity[.]" *Id.* This is especially true where, as here, the patient is required to prove more than one layer—or multiple acts-of tortious conduct in order to prevail. It is for this reason that the court held in Winona that it availed the patient nothing to prove that *Winona* was negligent in credentialing the physician in question if the patient did not also prove that said physician's negligence in rendering health care services was a proximate cause of the patient's harm. In other words, both allegedly tortious acts that comprised the patient's claim of malpractice must sound in medical malpractice and not merely ordinary negligence.

Applying these principles to the instant case, the Harrolds' claim against Fairbanks requires proof, at least so far as this appeal is concerned, both that Shears was guilty of sexual misconduct with Natalie, and that Shears was in a position to do this as a result of Fairbanks's negligent supervision. Pursuant to *Winona*, both allegations, i.e., Shears's sexual misconduct and Fairbanks's negligent supervision of Shears, must sound in medical malpractice in order for the action to come within the Act's purview. As set out above, this court has consistently held that an employee's sexual conduct with a patient cannot constitute a rendition of health care or professional services, and thus a claim based thereon does not fall under the Act. *See, e.g., Grzan v. Charter Hosp. of Nw. Indiana,* 702 N.E.2d 786; *Murphy v. Mortell,* 684 N.E.2d 1185; and *Doe by Roe v. Madison Ctr. Hosp.,* 652 N.E.2d 101. For these reasons, the trial court did not err in determining that the claim filed against Fairbanks by the Harrolds does not fall within the purview of the Act.

Ruling affirmed.

DARDEN, J., and BARNES, J., concur.