FILED

Jul 10 2023, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Margaret M. Christensen
Moncerrat Z. Alvarez
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana

Gregory Allen Crisman
Allison Elizabeth Pulliam
Eichhorn & Eichhorn
Hammond, Indiana

ATTORNEY FOR APPELLEE

Andrew T. Shupp
Hoeppner Wagner & Evans, LLP
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jatinder K. Kansal, M.D., P.C., <br> *Appellant-Defendant,* <br><br> v. <br><br> Taylor Krieter, <br> *Appellee-Plaintiff* | July 10, 2023 <br><br> Court of Appeals Case No. <br> 22A-CT-2646 <br><br> Appeal from the <br> Lake Superior Court <br><br> The Honorable <br> Stephen E. Scheele, Judge <br><br> Trial Court Cause No. <br> 45D05-1905-CT-564 |

**Opinion by Judge Vaidik**
Judges Tavitas and Foley concur.

**Vaidik, Judge.**

# Case Summary

Taylor Krieter has sued Dr. Jatinder Kansal for battery and intentional infliction of emotional distress, alleging that he touched her inappropriately when she was seeing him for allergies and eczema. Taking the position that her claims are not medical-malpractice claims, Krieter did not present a proposed complaint to a medical-review panel before going to court, as would be required under Indiana's Medical Malpractice Act, Ind. Code art. 34-18. Dr. Kansal moved to dismiss for lack of subject-matter jurisdiction, arguing that the Act applies because any sexual misconduct (he denies there was any) occurred during medical appointments where Dr. Kansal examined and treated Krieter. The trial court denied Dr. Kansal's motion. We affirm. The issue isn't whether the alleged tortious conduct occurred during the provision of medical care but whether the conduct itself was part of the provision of medical care. Assuming sexual misconduct occurred, as we must at this early stage of the case, it was wholly unrelated to the provision of medical care. Therefore, Krieter is not claiming medical malpractice, the Medical Malpractice Act doesn't apply, and the trial court has subject-matter jurisdiction.

# Facts and Procedural History

Dr. Kansal is a board-certified Asthma, Allergy, and Immunology specialist. In 2016 and 2017, Krieter saw him several times for allergies and eczema. In 2019,

Krieter sued Dr. Kansal for battery and intentional infliction of emotional distress, alleging that Dr. Kansal "did inappropriately touch and/or molest" her while she was his patient. Appellant's App. Vol. II p. 12.

[3]     At her deposition, Krieter offered specifics, including the following. Krieter went to see Dr. Kansal for treatment of her seasonal allergies, and it was Dr. Kansal who brought up her eczema and said he needed to examine her skin. Krieter's mother was with her at the early appointments, but when her mother stopped accompanying her, Dr. Kansal's demeanor and conduct changed. At various appointments in 2017, Dr. Kansal "cupped" Krieter's breasts, "rubbed" her nipples with his fingers, and "rubbed" her buttocks and thighs for fifteen to twenty seconds. *Id.* at 125-38. Krieter didn't always wear a bra, but when she did, Dr. Kansal sometimes lifted it and touched her breasts. Dr. Kansal always told Krieter he needed to "check everywhere," *id.* at 122, 124, 138, and she initially took his word for it, but she eventually realized he was touching her in a sexual way that had nothing to do with medical treatment. During one of the last visits, Dr. Kansal lifted Krieter's bra and felt her breasts but didn't touch her anywhere else. When Dr. Kansal was alone with Krieter, he spoke to her in a sexual way and in a different voice than the one he used when others were in the room. For example, he told her she was a "very pretty girl," told her she should shave her legs because men prefer smooth legs, and asked her questions about her boyfriend, including whether he cared that she worked at Hooters. *Id.* at 117, 135, 142.

[4] After Krieter's deposition, Dr. Kansal moved to dismiss her complaint for lack of subject-matter jurisdiction under Trial Rule 12(B)(1). He denied any inappropriate conduct or statements, explained that "[t]horough and complete whole body skin examinations" were necessary because of Krieter's severe skin conditions, and framed Krieter's claims as complaints about the scope of those examinations. *Id.* at 26-48. He argued that such claims are subject to the Medical Malpractice Act, which provides that a malpractice claim cannot be commenced in court until the claimant has presented a proposed complaint to a medical-review panel and the panel has given an opinion. Ind. Code § 34-18-8-4. Because Krieter did not present her claims to a medical-review panel before going to court, Dr. Kansal asserted that the trial court lacks subject-matter jurisdiction. *See, e.g., Rossner v. Take Care Health Sys., LLC*, 172 N.E.3d 1248, 1255 (Ind. Ct. App. 2021) (noting that a trial court lacks subject-matter jurisdiction over a malpractice claim that has not been through a medical-review panel), *trans. denied*.[1]

[5] Following briefing and oral argument, the trial court denied Dr. Kansal's motion without explanation. Dr. Kansal then sought and received permission to bring this interlocutory appeal.[2]

---

[1] In support of his motion, Dr. Kansal submitted an affidavit from Dr. Laura Rogers, who opined that everything Dr. Kansal did with Krieter was medically appropriate. However, Dr. Rogers's opinion was based entirely on Dr. Kansal's version of events. She did not consider Krieter's deposition testimony. Therefore, the affidavit is largely unhelpful in determining whether Krieter's claims are subject to the Medical Malpractice Act.

[2] We held oral argument on May 31, 2023. We thank counsel for their helpful advocacy.

# Discussion and Decision

[6] Where, as here, a trial court rules on a Trial Rule 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction based on a paper record and oral argument, with no evidentiary hearing, our review is de novo. *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001). While a court deciding a motion to dismiss for failure to state a claim under Trial Rule 12(B)(6) can consider only the allegations in the plaintiff's complaint, a court deciding a 12(B)(1) motion "may consider not only the complaint, but also any affidavits or other evidence presented and submitted on the issue of subject matter jurisdiction." *Martinez v. Oaklawn Psychiatric Ctr., Inc.*, 128 N.E.3d 549, 555 (Ind. Ct. App. 2019), *clarified on reh'g*, 131 N.E.3d 777, *trans. denied*.

[7] Dr. Kansal renews his argument that Krieter's claims are medical-malpractice claims subject to the Medical Malpractice Act, that she was therefore required to present a proposed complaint to a medical-review panel before going to court, and that because she failed to do so the trial court lacks subject-matter jurisdiction. The Act defines "malpractice" as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." I.C. § 34-18-2-18. We must decide, then, whether Krieter's claims are "based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." We hold they are not.

[8] As Dr. Kansal notes, we have held that a claim is subject to the Medical Malpractice Act if (1) the alleged tortious conduct "involves provision of medical services" and (2) "the rendering of medical services is to the plaintiff for the plaintiff's benefit." *Anonymous Hosp., Inc. v. Doe*, 996 N.E.2d 329, 334 (Ind. Ct. App. 2013), *trans. denied*. Dr. Kansal argues both prongs are satisfied here because the conduct at issue occurred "during the provision of medical services" and "in the course of scheduled medical appointments" meant to benefit Krieter. Appellant's Br. pp. 26-31. But the question isn't whether the alleged conduct occurred "during" the provision of medical services. The question is whether the alleged tortious conduct itself "involves" the provision of medical services. Krieter claims that she went to see Dr. Kansal for medical treatment and that at some point during the appointments Dr. Kansal's conduct would transition from examination for medical purposes to groping for sexual purposes. This detour to sexual groping, if it occurred, was not medical care and did not "involve" medical care.

[9] This conclusion is consistent with other well-established principles in this area. As we recently explained:

> The MMA is not all-inclusive for claims by patients against healthcare providers nor is it intended to extend to cases of ordinary negligence. Rather, it covers only curative or salutary conduct of a health care provider acting within his or her professional capacity and not conduct unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment. The fact that the alleged misconduct occurred in a healthcare facility, or that the injured party was a patient at the facility, is not dispositive of whether the MMA

applies. Instead, we must look to the substance of the claim and determine whether it is based on the provider's behavior or practices while acting in his or her professional capacity as a provider of medical services.

A case sounds in ordinary negligence where the factual issues are capable of resolution by a jury without application of the standard of care prevalent in the local medical community. By contrast, a claim falls under the MMA where there is a causal connection between the conduct complained of and the nature of the patient-health care provider relationship. Thus, acts or omissions of a health care provider unrelated or outside the provider's role as a health care professional are outside the reach of the MMA.

*Doe v. Ind. Dep't of Ins.*, 194 N.E.3d 1197, 1200-01 (Ind. Ct. App. 2022) (cleaned up), *trans. denied*. Sexual groping is not "curative or salutary conduct." It is "conduct unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment."

[10]     Our holding is also consistent with this Court's other decisions addressing sexual-misconduct claims against healthcare providers. We have repeatedly held that such claims are not subject to the Medical Malpractice Act. *See Ind. Dep't of Ins. v. Doe*, --- N.E.3d ---, No. 22A-CT-1276, 2023 WL 3768429 (Ind. Ct. App. June 2, 2023); *Doe*, 194 N.E.3d 1197; *Fairbanks Hosp. v. Harrold*, 895 N.E.2d 732 (Ind. Ct. App. 2008), *trans. denied*; *Grzan v. Charter Hosp. of Nw. Ind.*, 702 N.E.2d 786, 792 (Ind. Ct. App. 1998); *Murphy v. Mortell*, 684 N.E.2d 1185

(Ind. Ct. App. 1997), *trans. denied*; *Doe by Roe v. Madison Ctr. Hosp.*, 652 N.E.2d 101 (Ind. Ct. App. 1995), *reh'g denied*.[3]

[11] Dr. Kansal contends this case is like *Popovich v. Danielson*, 896 N.E.2d 1196 (Ind. Ct. App. 2008), *trans. denied*, a case that didn't involve claims of sexual misconduct. There, the plaintiff sued a doctor for battery, claiming he was rough with her at the hospital after a car accident, apparently because he believed she was drunk. Specifically, the plaintiff alleged that the doctor spoke rudely to her, refused her pain medication, and then "grabbed [her] by her ankle and in a quick, jerky and rough manner lifted her leg straight in the air over her body and pierced the open flesh with a needle causing excruciating pain from her broken ribs, the embedded glass cuts and bruises to her chest and abdomen[.]" *Id.* at 1199. We held that, notwithstanding the plaintiff's allegation that the doctor acted maliciously, the claim was covered by the Medical Malpractice Act because the doctor's alleged battery "occurred while he was evaluating [the plaintiff's] injuries, as he had been called to the hospital to do, and thus is based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services." *Id.* at 1202 (cleaned up). In a footnote, we added that the plaintiff's description of the doctor's

---

[3] In some of these cases, the **patients** argued that their sexual-misconduct claims were covered by the Medical Malpractice Act, hoping to access the Patient's Compensation Fund established by the Act. *See Doe*, --- N.E.3d ---, No. 22A-CT-1276, 2023 WL 3768429; *Doe*, 194 N.E.3d 1197; *Murphy*, 684 N.E.2d 1185. We have rejected the argument regardless of who was making it. The only exception we have recognized is when a psychologist, psychiatrist, or other mental-health professional mishandles the "transference phenomenon" and has a sexual relationship with a patient. *See, e.g., Dillon v. Callaway*, 609 N.E.2d 424 (Ind. Ct. App. 1993), *trans. denied*. Dr. Kansal does not argue that exception applies here.

conduct "suggests he displayed 'poor bedside manner' or was insensitive in his treatment of [the plaintiff]—the reasonableness of which is to be determined by the medical review panel; however, we cannot say his conduct was so 'wanton and gratuitous' as to fall outside the Malpractice Act." *Id.* at 1202 n.2.

[12]  We find *Popovich* distinguishable. There, the patient alleged that the actual examination and treatment were too rough. As Krieter puts it, "The substance of the allegations was that [the doctor] inappropriately treated Popovich's injuries – in short, classic medical malpractice allegations." Appellee's Br. p. 20. Here, on the other hand, Krieter alleges that Dr. Kansal ceased treatment all together and shifted to groping her for his own sexual gratification. If true, that conduct went far beyond "poor bedside manner" or mere insensitivity.

[13]  We add a caveat. At oral argument, Dr. Kansal's attorney told us that Dr. Kansal denies the alleged touching at the core of Krieter's claims—cupping her breasts, rubbing her nipples, and rubbing her buttocks for fifteen to twenty seconds at a time. But if he was admitting that touching and arguing it was medically appropriate, the Medical Malpractice Act might apply. Krieter conceded as much at the hearing on the motion to dismiss. Tr. pp. 25, 29, 35-36. With certain medical specialties, the line between medical touching and sexual touching can be blurry. Doctors often have to touch patients in sensitive areas and in uncomfortable ways, and a patient could misinterpret proper medical touching as inappropriate sexual touching. In a case where the doctor and the patient agree as to the touching that occurred but disagree as to the purpose of the touching, application of the Act and presentation to a medical-

review panel might be appropriate. But this isn't such a case, so we leave that issue for another day.

[14]     Ultimately, we agree with Krieter's characterization of this case:

> The question for the jury is [] straightforward and purely factual – did Kansal grope [Krieter's] breasts and buttocks as she describes or not? If he did, this was a sexual assault, not the provision of medical services. If he did not, then [Krieter's] claim fails regardless of whether Kansal's conduct met the standard of care for eczema treatment.

Appellee's Br. pp. 20-21. This is a "he said, she said" credibility fight that would not benefit from consideration by a medical-review panel. The factual issue is "capable of resolution by a jury without application of the standard of care prevalent in the local medical community." *Doe*, 194 N.E.3d at 1200. Therefore, Krieter's claims are not subject to the Medical Malpractice Act, and the trial court did not err by denying Dr. Kansal's motion to dismiss.

[15]     Affirmed.

Tavitas, J., and Foley, J., concur.