**M.V., Appellant–Plaintiff,**

v.

**CHARTER TERRE HAUTE BEHAVIOR-
AL HEALTH SYSTEM, INC., Appel-
lee–Defendant.**

No. 84A05–9807–CV–373.

Court of Appeals of Indiana.

June 15, 1999.

James O. McDonald, Everett Everett &
McDonald, Terre Haute, Indiana, Attorney
for Appellant.

David S. Allen, Julia Blackwell Gelinas, Locke Reynolds Boyd & Weisell, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION ON REHEARING

BROOK, Judge

### Case Summary

Appellee-defendant Charter Terre Haute Behavioral Health System, Inc. ("Charter") petitions this Court for rehearing in this case. We grant Charter's petition for rehearing, vacate our original opinion, and affirm the trial court's dismissal of M.V.'s[1] complaint of false imprisonment for lack of subject-matter jurisdiction.[2]

### Issue

One issue is dispositive of our review: whether the trial court erred by granting Charter's motion to dismiss M.V.'s complaint for lack of subject-matter jurisdiction.

### Facts and Procedural History

On the evening of February 11, 1996, M.V. voluntarily admitted himself to Charter, presenting as suicidal and depressed. During the initial interview, it was ascertained that M.V. was experiencing marital, financial, and health problems. He had not worked in three months; he was feeling guilty over an affair; and he was considering leaving his wife, who had given birth to a baby three months earlier. Dr. Paras Harshawat ("Dr. Harshawat"), M.V.'s attending physician, reviewed the assessment findings and ordered him to be admitted to the skilled adult unit on a suicide watch. M.V. signed several consent forms and was prescribed several medications. That night, M.V. was told to put on a hospital gown and sleep on a thin mattress on the floor.

During his stay at Charter, M.V. participated in several forms of therapy, including medication therapy. On February 14, 1996, Dr. Harshawat recorded that he had diagnosed M.V. with "major depression-suicidal." The next day, Dr. Harshawat noted that M.V. was instructed "to write a letter to his wife stating all his guilt he is telling us" and "to write the pros and cons of divorcing his wife." On February 16, 1996, M.V. left Charter on a day pass and did not return.[3]

On October 15, 1996, M.V. filed a complaint against Charter alleging, *inter alia*, that he had been unlawfully detained and forced to take medication. Charter filed its answer and two affirmative defenses on December 4, 1996, which alleged that (1) M.V. had failed to comply with the procedural requirements of the Indiana Medical Malpractice Act ("the Act");[4] and (2) the trial court lacked subject-matter jurisdiction to hear M.V.'s complaint because the Act required that a medical review panel be formed and a panel opinion issued before he could bring an action in state court.

On January 23, 1998, Charter filed a motion to dismiss for lack of subject-matter jurisdiction pursuant to Ind. Trial Rule 12(B)(1), in which it asserted that M.V.'s complaint was for medical malpractice and had not been presented to a medical review panel as required by the Act. M.V. filed a response to Charter's motion on February 17, 1998, claiming that Charter's tortious acts of false imprisonment were unrelated to the promotion of his health or its "exercise of professional expertise, skill or judgment" and therefore fell outside the purview of the Act. Charter filed a reply to M.V.'s response on March 6, 1998, which stated that the complained-of actions "were all health care related decisions governed by the [Act]."

The trial court issued an order dismissing M.V.'s complaint for lack of subject-matter

---

**1.** As noted in our original opinion, we recognize that when an adult is a party to a lawsuit, the party's name is available to the public in an opinion published by this Court. Generally, absent a motion, adults would be referred to by their full names. However, given the sensitive nature of the mental health issues discussed in this opinion, we choose to use M.V.'s initials.

**2.** M.V. filed his brief in opposition to Charter's petition for rehearing after the expiration of the 15–day limit mandated by Ind. Appellate Rule 11(A); consequently, this Court granted Charter's motion to strike M.V.'s brief.

**3.** In our original opinion, we mistakenly noted the date of M.V.'s departure from Charter as February 17, 1996.

**4.** IND. CODE § 34–18–1–1 *et seq.;* formerly IND. CODE § 27–12–1–1 *et seq.* at the time M.V. filed his complaint. We will refer to provisions in the Act by their current designations for purposes of clarity.

jurisdiction on May 26, 1998. M.V. filed a motion to correct error on June 18, 1998, which was denied by the trial court on July 1, 1998.

### Discussion and Decision

■ "Subject-matter jurisdiction is the power of a court to hear and decide a particular class of cases." *Putnam County Hosp. v. Sells*, 619 N.E.2d 968, 970 (Ind.Ct.App. 1993). This issue is resolved "by determining whether the claim involved falls within the general scope of authority conferred on a court by the Indiana Constitution or by statute." *Id.* When reviewing a trial court's ruling on a motion to dismiss for lack of subject-matter jurisdiction, this Court may affirm the judgment "on any theory supported by the evidence of record." *Walters v. Modern Aluminum*, 699 N.E.2d 671, 673 (Ind.Ct.App.1998), *trans. denied.*

■ M.V. contends that the Act is inapplicable because the decisions made by Dr. Harshawat, including prescribing medication, placing him on a suicide watch, and denying his release constitute the intentional tort of false imprisonment. Charter argues that the actions of which M.V. complains "constitute the rendition of health care and the use of professional judgment and skill" and therefore fall within the ambit of the Act. "[T]he Act concerns itself with the behavior or practices of a physician acting in his professional capacity as a provider of medical services." *Collins v. Thakkar*, 552 N.E.2d 507, 510 (Ind. Ct.App.1990), *trans. denied.* "Conversely, acts or omissions of a health care provider unrelated or outside the provider's role as a health care professional are not the Act's aim." *Id.* While the Act "does not specifically exclude intentional torts from the definition of malpractice," we must look to the substance of a claim to determine its applicability. *Doe by Roe v. Madison Center Hosp.*, 652 N.E.2d 101, 104 (Ind.Ct.App.1995), *trans. dismissed by Doe v. Madison Cty Hosp.* (1996).

"Health care" is defined in IND. CODE § 34–18–2–13 as "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." As a corporation "licensed or legally authorized by this state to provide health care or professional services," Charter is classified as a "health care provider" under IND. CODE § 34–18–2–14(1). As defined in IND. CODE § 34–18–2–22, a "patient" is "an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." IND. CODE § 34–18–2–18 defines "malpractice" as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Finally, the Act defines a "tort" as "a legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury or damage to another." IND. CODE § 34–18–2–27.

■ Merely labeling acts performed by a health care provider as intentional torts does not automatically shield a plaintiff's claim from the procedural mandates of the Act. *See Boruff v. Jesseph*, 576 N.E.2d 1297, 1298 (Ind.Ct.App.1991) ("mere use of the word battery" does not necessarily "escape the requirements of the Act"). Charter's actions in this case, such as admitting M.V. as a patient; requesting him to put on a hospital gown; ordering him to sleep on a thin mattress on the floor as a suicide watch; and requiring him to take medication are professional judgments made by health care providers in psychiatric facilities.

■ Discharge decisions are also designed to promote patient health, involve professional judgment, and thereby generally fall under the Act. However, M.V. contends that he submitted a written request to be released from the facility pursuant to IND. CODE § 12–26–3–4 that was denied by Charter in contravention of the statute;[5] it is

---

5. IND. CODE § 12–26–3–4 provides in relevant part:

   Except as provided in section 5 of this chapter, an individual who has been admitted to a facility under this chapter shall be released within twenty-four (24) hours of a written request for release made to the superintendent or the individual's attending physician by:
   (1) the individual[.]

upon this issue that we erroneously based our earlier holding that Charter's refusal to honor M.V.'s request took his false imprisonment claims outside the purview of the Act.[6]

In our earlier opinion, we mistakenly noted that M.V. claimed in his deposition to have made the request to be released from Charter on February 14, 1996. In fact, there is no indication in the record that M.V. ever acknowledged the existence of the alleged request[7] until his appellate brief. In his reply brief, M.V. claims that Charter raised the issue of the request in a reply to the trial court; on the contrary, Charter merely observed in passing that M.V. *could have* provided a written request for release to the facility superintendent or his attending physician pursuant to IND. CODE § 12–26–3–4 but did not do so. Because M.V. did not properly present the issue of the written request to the trial court, he may not argue this issue on appeal. *Carr v. Carr*, 685 N.E.2d 92, 95 (Ind.Ct.App.1997).

Waiver notwithstanding, Charter correctly observes that upon the receipt of a release request, IND. CODE § 12–26–3–5 gives the facility superintendent or attending physician five days in which to file a written report with the court that "there is probable cause to believe that the [individual requesting release] is mentally ill and either dangerous or gravely disabled" and "requires continuing care and treatment in the facility"; the report must also contain a request for a hearing on the report. Even assuming *arguendo* that M.V. had properly submitted a written request for release on February 14, he left Charter before the expiration of the statutory five-day deadline.

Because M.V. failed to preserve the issue of the written release request for appeal, we find that IND. CODE § 12–26–3–4 and IND. CODE § 12–26–3–5 are irrelevant in addressing the merits of this case. Instead, we refer to our above analysis in holding that Charter's actions with respect to M.V. constituted professional services that fall within the purview of the Act. Consequently, the trial court correctly determined that it lacked subject-matter jurisdiction to hear M.V.'s complaint. *See Putnam County Hosp.*, 619 N.E.2d at 970 (the Act "grants subject-matter jurisdiction over medical malpractice actions first to the medical review panel, and then to the trial court").

## Conclusion

This Court's original opinion in this case is vacated, and we affirm the trial court's dismissal of M.V.'s complaint for lack of subject-matter jurisdiction.

STATON, J., concurs.

RILEY, J., concurs in result.

---

**6.** In his appellate brief, M.V. mistakenly claims that IND. CODE § 12–26–5–1 *et seq.* apply to his case; this chapter of the Indiana Code clearly applies to emergency detentions, whereas M.V. *voluntarily admitted himself to Charter.* His claim that his "admission ceased being voluntary the instant he was refrained from voluntarily discharging himself" is speculative argument unsupported by any relevant authority and is further precluded from review by the waiver considerations outlined in this opinion.

**7.** Although we dispose of this issue via waiver, we note that M.V.'s "request" was not addressed to either the facility superintendent or his attending physician as required by IND. CODE § 12–26–3–4. The record appears to indicate that the "request" was part of the writing exercise described above, in which M.V. was "to write the pros and cons of divorcing his wife." M.V.'s argument that Charter was required to provide him with a release request form is unsupported by any statutory or caselaw authority and need not be considered further.