**Louis R. THOMAS, Appellant–Petitioner,**

v.

**Howard C. DEITSCH, M.D., Appellee–Respondent.**

**No. 89A01–0002–CV–55.**

Court of Appeals of Indiana.

March 7, 2001.

Jon R. Pactor, Indianapolis, IN, Attorney for Appellant.

Richard L. Fairchild, William N. Ivers, Kathleen M. Burch, Stewart & Irwin, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge

Appellant-plaintiff Louis Thomas appeals the trial court's entry of summary judgment in favor of appellee-defendant Dr. Howard Deitsch. Thomas presents two issues for appeal which we restate as:

I. Whether the trial court erred by exercising jurisdiction in this case prior to the issuance of an opinion by the medical review panel; and

II. Whether the trial court erred by granting summary judgment in favor of Deitsch.

We affirm.

### Facts and Procedural History

Thomas was a regular patient of Deitsch. On November 25, 1997, Thomas contacted Deitsch's office for an appointment, because he was experiencing pain in the right side of his chest and coughing up blood. Deitsch did not see Thomas until November 28, at which time he sent Thomas to the hospital for a chest X-ray. A follow-up appointment was scheduled for December 2.

Prior to his appointment with Deitsch on December 2, Thomas ingested the daily doses of his regularly prescribed medications. Thomas also took half of a pill of the tranquilizer Ativan and multiple doses of Guiatuss AC, a cough medication containing alcohol and Codeine, which had been prescribed to treat a previous respiratory illness. Thomas consumed some wine during lunch and more Guiatuss AC afterwards.

After lunch, Thomas drove to Deitsch's office for his follow-up appointment. While he was in the office, both Deitsch and his office nurse observed that Thomas had an odor of alcoholic beverage about him, slurred speech and an unsteady gait. Having concluded that Thomas was intoxicated, Deitsch instructed his nurse to telephone the police to put them on notice of Thomas' condition and the fact that he would be driving home. After leaving Deitsch's office, Thomas was arrested for operating a vehicle while intoxicated (OVWI). Thomas pleaded guilty to the offense, which was enhanced to a class D felony because he had a prior conviction for drunk driving.

Thomas filed a proposed medical malpractice claim with the Department of Insurance alleging that Deitsch: (1) breached his duty of confidentiality as a physician to Thomas by reporting Thomas' condition to the police, and (2) negligently failed to prevent Thomas from driving away even though Deitsch suspected that Thomas was intoxicated.

Deitsch filed a Motion for Preliminary Determination of Law in the trial court, seeking entry of summary judgment in his favor. The trial court held a hearing on the motion and subsequently issued an order granting summary judgment in Deitsch's favor. Thomas appeals.

### Discussion and Decision

In reviewing a grant of summary judgment by the trial court, we stand in the shoes of the trial court, utilizing the same standards and resolving any questions of fact or inferences drawn therefrom in favor of the non-moving party. *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933, 936 (Ind.Ct. App.1996). Summary judgment should be granted when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The trial court's grant of summary judgment will be affirmed if it is sustainable on any theory found in the evidence designated to the trial court. *Bamberger,* 665 N.E.2d at 936.

Thomas asserts that the trial court lacked subject matter jurisdiction over the case, because a medical review panel had not yet rendered an opinion. Thomas argues that, as a result, the trial court erred in granting summary judgment in Deitsch's favor. We disagree.

In Indiana, an action against a health care provider may not be commenced in a trial court until a medical review panel has reviewed the proposed complaint and rendered an opinion. Ind.Code § 34–18–8–4 (1998). However, "[t]he filing of a copy of the proposed complaint and motion with the clerk confers jurisdiction upon the court over the subject matter and the parties to the proceeding for the limited purposes stated in this chapter." Ind.Code § 34–18–11–2(b). One such "limited purpose" stated in the Malpractice Act is for the trial court to "preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure." Ind.Code § 34–18–11–1(a)(1).

Deitsch paid the filing fee, filed a copy of Thomas' proposed complaint and utilized Indiana Code section 34–18–11 1(a)(1) by filing his Motion for Preliminary Determination of Law. Deitsch's motion for summary judgment clearly qualifies as an issue that may be preliminarily determined under the Indiana Rules of Procedure. Accordingly, the trial court did not err in exercising jurisdiction over this case. *See Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692 (Ind.2000).

■ Likewise, we find no error in the trial court's entry of summary judgment against Thomas. The Medical Malpractice Act applies to "a patient or the representative of a patient who has a claim... for bodily injury or death on account of malpractice." Ind.Code § 34–18–8–1 (1998). "Malpractice" is defined as "... a tort or breach of contract based on health care or professional services that were provided, or the should have been provided, by a health care provider, to a patient." *Id.* § 34–18–2–18.

■ As we recently concluded in *Winona Memorial Hospital, et al. v. Kuester,* 737 N.E.2d 824 (Ind.Ct.App.2000), the Medical Malpractice Act "applies to conduct, curative or salutary in nature, by a health care provider acting in his or her

professional capacity, and is designed to exclude only conduct which is unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment." *Id.* at 828 (quoting *Methodist Hospital of Indiana, Inc. v. Ray,* 551 N.E.2d 463, 468 (Ind.Ct.App. 1990) *adopted on trans.,* 558 N.E.2d 829 (Ind.1990)). Considering the operative facts alleged in Thomas's proposed complaint, we hold that those facts do not fall within the Medical Malpractice Act.

Thomas came in for a follow-up appointment with Deitsch. Thomas arrived at the doctor's office smelling of alcohol, slurring his speech and having the hiccups. Thomas's intoxication was easily observable without need for medical expertise. His condition was also apparent before and after his examination by Deitsch; it did not come to light only through that examination. Indeed, Deitsch hoped that an officer from the Richmond Police Department would meet Thomas in Deitsch's office before Thomas drove home. It was only due to the fact that the department received the call from Deitsch's nurse, Ms. Mitchell, during a change in shifts that Thomas had driven away from Deitsch's office before an officer could respond.

Under these facts and circumstances, what Thomas refers to as an "injury", i.e. his arrest, did not arise from conduct "curative or salutary in nature, [rendered] by a health care provider acting in his or her professional capacity." *Kuester,* 737 N.E.2d at 828. Thomas's alleged injury was, in fact, "unrelated to promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment" and therefore not controlled by the Medical Malpractice Act. *Id.; see generally Ray,* 551 N.E.2d 463 (Ind.Ct.App. 1990), *adopted on trans.,* 558 N.E.2d 829 (Ind.1990); *Doe by Roe v. Madison Ctr. Hosp.,* 652 N.E.2d 101 (Ind.Ct.App.1995); *Putnam County Hosp. v. Sells,* 619 N.E.2d 968 (Ind.Ct.App.1993); *Winona Mem'l Found. of Indianapolis v. Lomax,* 465 N.E.2d 731 (Ind.Ct.App.1984); *Methodist*

*Hosp. of Indiana, Inc. v. Rioux,* 438 N.E.2d 315 (Ind.Ct.App.1982). Although we do not condone Deitsch's passivity in allowing Thomas to leave the office in an inebriated state, because Thomas chose to invoke the Medical Malpractice Act by filing his proposed complaint with the Department of Insurance, we do not reach the question of whether the operative facts constitute a cognizable claim for ordinary negligence.

### Conclusion

Thomas's claim does not arise from the health care or professional services rendered by Deitsch on December 2, 1997, and therefore does not fall within the ambit of the Medical Malpractice Act. Deitsch is entitled to judgment as a matter of law. For all of these reasons, we hold that the trial court did not err in granting Deitsch's motion for summary judgment.

Affirmed.

MATTINGLY, J., concurs.

ROBB, J., concurs in result with separate opinion.

ROBB, Judge, concurring in result

I concur in result, but write separately to address the issue of Thomas' recourse in light of our decision today.

I agree that Thomas' claim does not sound in medical malpractice and he therefore was not required to first file his proposed complaint with the Department of Insurance. Unlike the plaintiff in *M.V. v. Charter Terre Haute Behavioral Health System, Inc.,* 712 N.E.2d 1064 (Ind.Ct. App.1999), whose false imprisonment claim against a psychiatric facility was dismissed for lack of subject matter jurisdiction because he had failed to first take his claim to the Department of Insurance, Thomas' claims did not arise because of Deitsch's provision of medical services. In *M.V.,* the plaintiff filed his complaint first in the trial court, and alleged that the Medical Malpractice Act did not apply because the acts of which he complained constituted the intentional tort of false imprisonment. We held that because the facility's actions were "professional judgments made by health care providers" that constituted professional services within the purview of the Act. *Id.* at 1066–67. However, Thomas' claims do not arise out of Deitsch's rendition of health care or use of professional judgment and skill, and thus, I agree with the majority that the trial court properly granted Deitsch's motion for summary judgment regarding this issue.

I write separately because the majority, although noting that it does not reach the issue of whether the operative facts would support a claim for ordinary negligence, does not address the statute of limitations implications of its decision. Because his claim involved his doctor, Thomas did the cautious thing in filing his proposed complaint with the Department of Insurance before seeking redress in a court of law. Our supreme court, in cases involving uncertainty about whether or not a provider has qualified pursuant to the Medical Malpractice Act, has noted:

> Some patients and their attorneys, of course, tender a complaint to the commissioner when they are uncertain whether a provider has qualified under the Act. . . . Filing a proposed complaint with the commissioner of insurance tolls the statute of limitations until the commissioner or his agent informs the parties that the provider has not qualified under the Act. . . . If the commissioner determines that the provider has not qualified and so notifies the parties, the statute of limitations begins running again and the claimant must file an action in court or risk being barred by the statute of limitations.

*Guinn v. Light,* 558 N.E.2d 821, 824 (Ind. 1990). *See also Miller v. Terre Haute Regional Hosp.,* 603 N.E.2d 861, 863 (Ind. 1992). Accordingly, any plaintiff, regardless of the qualified status of defendant, is entitled to the benefit of the tolling of the statute of limitations while the Department

of Insurance determines the qualified status. *Miller*, 603 N.E.2d at 863.

I believe a similar rule should be applicable in cases such as this one, in which the medical malpractice nature of the claim is questionable, and the plaintiff chooses to file first with the Department of Insurance. While the nature of the claim is being determined, the statute of limitations should be tolled, so that if it is ultimately determined that the claim is not, in fact, one involving medical malpractice which was required to be filed before the Department of Insurance, the plaintiff may still have the opportunity ·to file a complaint alleging common law claims in the trial court. Any other approach would put the plaintiff in an untenable situation of having to predict how the Department of Insurance and the courts will regard his "borderline" claim. Additionally, if we were not to toll the statute of limitations in cases like this, we would place far too much power in the hands of the doctor: if the plaintiff files with the Department of Insurance within two years, but the statute of limitations is not tolled, then the doctor can simply wait until two years has passed to file his motion for preliminary determination and foreclose any possibility the plaintiff might have to raise a common law claim.

Accordingly, I believe the statute of limitations should be considered tolled from the time Thomas filed his proposed complaint with the Department of Insurance until a determination was made that the claim was not a medical malpractice claim. Because Thomas timely filed all necessary motions to bring this case to this court, I also believe that the time this case was on appeal should toll the statute of limitations such that, upon certification of the case, Thomas would still have whatever time remained in his original two-year statute of limitations at the time he filed his proposed complaint in which to file any common law claims to which he might be entitled under the facts of this case.[1]

---

1. It appears that the alleged act of malpractice occurred on December 2, 1997. Thomas filed his proposed complaint with the Department of Insurance on July 28, 1998. Thus, at the time Thomas filed his complaint, there was still one year and 127 days remaining in the two years provided by statute for filing such a claim.